[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 20, 2005
THOMAS K. KAHN
CLERK

No. 05-11773
Non-Argument Calendar

_____

D. C. Docket No. 04-00467-CR-T-26-EAJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTONIO ESTUPINAN-YESQUAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(October 20, 2005)

Before BLACK, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Antonio Estupinan-Yesquan appeals his 135-month sentence for: (1) possession with intent to distribute 5 kilograms or more of cocaine while aboard a vessel subject to United States jurisdiction, in violation of 46 U.S.C. App. § 1903(a), (g), and 21 U.S.C. § 960(b)(1)(B)(ii); and (2) conspiracy to possess with intent to distribute 5 kilograms or more of cocaine while aboard a vessel subject to United States jurisdiction, in violation of 46 U.S.C. § 1903(a), (g), and (j), and 21 U.S.C. § 960(b)(1)(B)(ii). Estupinan-Yesquan was sentenced after Booker under an advisory Guidelines scheme. After review, we affirm.

## I. BACKGROUND

### A. Plea Colloquy

Estupinan-Yesquan pled guilty without a written plea agreement to the above-stated charges. During the plea colloquy, the government set forth the following facts. On or about September 23, 2004, in the eastern Pacific Ocean, Estupinan-Yesquan and seven co-defendants were traveling in the San Jose, a 77-foot fishing vessel registered in Belize. The fishing vessel contained a large quantity of cocaine packaged in 20-kilogram bales secreted in a hidden compartment, which was located in the forward section of the hull.

On the morning of September 23, 2004, the United States Coast Guard boarded the San Jose and noticed that flooring tiles had been placed in fresh

2

concrete in both the port and starboard berthing compartments. Beneath the newly-laid tiles, the Coast Guard found two entry ways to the hidden compartment. Inside the compartment, the Coast Guard found 525 bales of cocaine weighing approximately 10,500 kilograms. Estupinan-Yesquan and his seven co-defendants were detained and transported to the United States.

Prior to the time that the San Jose left the port in Colombia, Estupinan-Yesquan and his co-defendants met with the captain of the San Jose and learned that they would be transporting the drugs to a transfer point in the eastern Pacific Ocean and would then distribute it to another person.

At the end of the government's proffer, Estupinan-Yesquan admitted to the facts, except the quantity of cocaine. Estupinan-Yesquan admitted only that there were at least 5 kilograms of cocaine on board the ship.

## B.    PSI and Sentencing

The Presentence Investigation Report ("PSI") assessed a base offense level of 38, holding Estupinan-Yesquan responsible for 10,500 kilograms of cocaine. The PSI recommended (1) a two-level safety-valve reduction, U.S.S.G. § 5C1.2 and 18 U.S.C. § 3553(f); and (2) a three-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1. With an offense level of 33 and a criminal history category of I, Etupinan-Yesquan's Guidelines range was 135-168 months'

imprisonment.

Estupinan-Yesquan objected to the PSI's failure to include a two-level downward departure for his role in the offense pursuant to U.S.S.G. § 3B1.2(b). Estupinan-Yesquan argued that he was a minor participant because the drugs aboard the San Jose did not belong to him, and he was recruited simply to be a sailor on the vessel. Estupinan-Yesquan also asserted that he was to have no role in the distribution of the cocaine nor its eventual sale.

The Probation Officer responded by stating that Estupinan-Yesquan was being held accountable only for the amount of drugs on the ship, the 10,500 kilograms, which was the same amount attributable to his co-defendants. Further, the PSI noted that Estupinan-Yesquan's role was of transporting "a very large shipment of cocaine," which was not distinguishable from that of other co-defendants aboard the ship.

At the sentencing hearing, Estupinan-Yesquan renewed his argument regarding a minor-role reduction. The district court overruled the objection, adopting the reasons stated in the PSI and further stating that "we have 10,500 kilograms of cocaine with a street value of 157 million, plus he's a mariner. I've already sentenced some other mariners in this case to 135 months which is the bottom of the guidelines."

4

The district court then sentenced Estupinan-Yesquan to 135 months' imprisonment, stating, "I intend to give him the bottom of the guidelines after considering all of the facts under Title 18, United States code 3553(a)."

## II. DISCUSSION

### A. Minor Role Reduction

On appeal, Estupinan-Yesquan first argues that the district court erred by denying him a minor-role reduction. We review for clear error a district court's determination of a defendant's qualification for a role reduction. United States v. De Varon, 175 F.3d 930, 937 (11th Cir. 1999) (en banc).

The defendant has the burden of establishing his role in the offense by a preponderance of the evidence. Id. at 939. Two principles guide a district court's consideration: (1) the court must compare the defendant's role in the offense with the relevant conduct attributed to him in calculating his base offense level; and (2) the court may compare the defendant's conduct to that of other participants involved in the offense. Id. at 943-44. When the relevant conduct attributed to a defendant is identical to his actual conduct, he cannot prove that he is entitled to a minor-role adjustment simply by pointing to some broader criminal scheme for which he was not held accountable. Id. at 941.

The district court did not clearly err in refusing to grant Eustupinan-Yesquan

5

a minor-role reduction. Under the first prong of the De Varon test, the district court held Estupinan-Yesquan accountable for only the 10,500 kilograms of cocaine attributable to him. See De Varon, 175 F.3d at 942-43 ("Therefore, when a drug courier's relevant conduct is limited to her own act of importation, a district court may legitimately conclude that the courier played an important or essential role in the importation of those drugs.").

As to the second prong of the De Varon test, Estupinan-Yesquan argues that his role was minor because he did not own the drugs, was recruited to be a sailor, and only participated in the importation. However, even if Estupinan-Yesquan's role was less than that of some other participants, this Court stated in De Varon that the fact that a defendant's role is less than that of other participants involved does not automatically entitle him to a minor-role reduction because it is possible that none of the individuals is entitled to be a minor participant. De Varon, 175 F.3d at 944. Moreover, the district court specifically noted that it imposed the same sentence on Estupinan-Yesquan as it imposed on other co-conspirators with the same role. Thus, the district court did not err in determining that Estupinan-Yesquan did not qualify for a minor-role reduction.

**B.    Booker**

Estupinan-Yesquan also argues that after United States v. Booker, 543 U.S.

__, 125 S. Ct. 738 (2005), his 135-month sentence was unreasonable because he presented mitigating circumstances regarding his life, including his lack of education.

In Booker, the Supreme Court held that the mandatory nature of the Sentencing Guidelines rendered them incompatible with the Sixth Amendment's guarantee to the right to a jury trial. Id. at 749-51. The Supreme Court decided that the appropriate remedy was to excise two specific statutory provisions that made the Guidelines mandatory, thereby rendering the Guidelines advisory. Id. at 764. The Supreme Court explained that, "[w]ithout the 'mandatory' provision, the Act nonetheless requires judges to take account of the Guidelines together with other sentencing goals" contained in § 3553(a). Id. Section 3553(a) provides that district courts imposing a sentence must consider, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, and the sentencing range established by the Guidelines. See 18 U.S.C. § 3553(a).

Post-Booker, we review sentences for unreasonableness. Booker, 125 S. Ct. at 765 (quotation and alteration omitted); see also United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005) (noting that "Booker established a

7

'reasonableness' standard for the sentence finally imposed on a defendant"). We recently held that "nothing in <u>Booker</u> or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." <u>United States v. Scott</u>, – F.3d –, 2005 WL 2351020, at *4 (11th Cir. Sept. 27, 2005).

We conclude that Estupinan-Yesquan's 135-month sentence is reasonable. As noted above, Estupinan-Yesquan's sentence was within the Guidelines range, one of the explicit § 3553(a) factors. 18 U.S.C. § 3553(a)(4). As the <u>Booker</u> Court noted, "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." <u>Booker</u>, 125 S. Ct. at 767. Further, it is clear the district court consulted the Guidelines as advisory and made an accurate computation of the Guidelines range.

The district court also considered the other § 3553(a) factors. The district court specifically stated that it was imposing a sentence at the low end of the Guidelines range "considering all of the facts under Title 18, United States code 3553(a)." Nothing in the record convinces us the sentence was unreasonable in light of the § 3553(a) factors. We are satisfied under the circumstances of this case that the sentence was reasonable. <u>United States v. Winingear</u>, – F.3d –, 2005 WL 2077087, at *4 (11th Cir. Aug. 30, 2005) (concluding sentence was reasonable in

8

light of the Guidelines range and the other factors outlined in § 3553(a)).

## III. CONCLUSION

Upon careful review of the record on appeal, and upon consideration of the parties' briefs, we discern no reversible error. Accordingly, we affirm Estupinan-Yesquan's sentence.

**AFFIRMED.**