[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 21, 2005
THOMAS K. KAHN
CLERK

_____

No. 05-11770
Non-Argument Calendar

_____

D. C. Docket No. 04-00467-CR-T-26-EAJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EUSEBIO MONTANA-BATALLA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(October 21, 2005)

Before BLACK, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Eusebio Montana-Batalla appeals his 135-month sentence for possession with intent to distribute 5 kilograms or more of cocaine while aboard a vessel subject to United States jurisdiction, in violation of 46 U.S.C. App. § 1903(a), (g), and 21 U.S.C. § 960(b)(1)(B)(ii), and conspiracy to possess with intent to distribute 5 kilograms or more of cocaine while aboard a vessel subject to U.S. jurisdiction, in violation of 46 U.S.C. § 1903(a), (g), and (j), and 21 U.S.C. § 960(b)(1)(B)(ii). Montana-Batalla was sentenced after United States v. Booker, 543 U.S. __, 125 S. Ct. 738 (2005) under an advisory Guidelines scheme. After review, we affirm.

## I. BACKGROUND

### A. Plea Colloquy

Montana-Batalla pled guilty without a written plea agreement to the above charges. During the plea colloquy, the government set forth the following facts. On or about September 23, 2004, in the eastern Pacific Ocean, Montana-Batalla and seven co-defendants were traveling in the San Jose, a 77-foot fishing vessel registered in Belize. The fishing vessel contained a large quantity of cocaine packaged in 20-kilogram bails secreted in a hidden compartment, which was located in the forward section of the hull.

On the morning of September 23, 2004, the United States Coast Guard

boarded the San Jose and noticed that flooring tiles had been placed in fresh concrete in both the port and starboard berthing compartments. Beneath the newly-laid tiles, the Coast Guard found two entry ways to the hidden compartment. Inside the compartment, the Coast Guard found 525 bales of cocaine weighing approximately 10,500 kilograms. Montana-Batalla and his seven co-defendants were detained and transported to the United States.

Prior to the time that the San Jose left the port in Colombia, Montana-Batalla and his co-defendants met with the captain of the San Jose and learned that they would be transporting the drugs to a transfer point in the eastern Pacific Ocean and would then distribute it to another person.

At the end of the government's proffer, Montana-Batalla admitted to the facts.

**B.    PSI and Sentencing**

The Presentence Investigation Report ("PSI") assessed a base offense level of 38, holding Montana-Batalla responsible for 10,500 kilograms of cocaine. The PSI recommended (1) a two-level safety-valve reduction under U.S.S.G. § 5C1.2 and 18 U.S.C. § 3553(f); and (2) a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. With an offense level of 33 and a criminal history category of I, Montana-Batalla's Guidelines range was 135-168 months'

imprisonment.

Montana-Batalla objected to the PSI's failure to include a two-level downward departure for his role in the offense pursuant to U.S.S.G. § 3B1.2(b).

The Probation Officer responded by stating that Montana-Batalla was being held accountable only for the amount of drugs on the ship, the 10,500 kilograms, which was the same amount attributable to his co-defendants. Thereafter, Montana-Batalla filed a motion for a downward departure for his role in the offense. Montana-Batalla's motion argued that he was entitled to a departure because he was not an organizer, leader, manager, or supervisor in the criminal activity, and his role in the offense was "minimal at best and minor at the least" in comparison to his co-defendants.

At the sentencing hearing, Montana-Batalla renewed his argument regarding a minor-role reduction. Montana-Batalla argued that: (1) although this conspiracy involved multiple trips, he was only involved in a single trip; (2) he was not involved in the organization or planning of the conspiracy; (3) he had no equity interest in the drugs; and (4) since "there must be a leader" in the conspiracy, "there must be [] minimal and minor participants."

The district court stated that, even assuming this trip was Montana-Batalla's first, it was "not going to treat him any differently than the other mechanic [it had]

4

just sentenced."  The district court overruled Montana-Batalla's objection, noting: (1) a "tremendous" amount of cocaine, 10,500 kilograms, was involved in the instant offense; (2) given the fact that the cocaine was hidden, a reasonable inference would be that everyone on the vessel assisted in the conspiracy; (3) Montana-Batalla was a mechanic, and "not just a regular mariner"; and (4) "[w]hen you're out there on the high seas and something goes wrong with a boat like this, the first person you want to have is a good mechanic.  So he's integral to this venture."

Montana-Batalla then noted that the district court already had mentioned some of the factors listed in § 3553(a); however, Montana-Batalla asked the court to consider the following in imposing his sentence: (1) he had served in the Colombian army; (2) he did not have a criminal history; (3) he had a stable work history; and (4) his family was struggling as a result of his incarceration.  The district court acknowledged these facts and sentenced Montana-Batalla to a term of 135 months' imprisonment as to Counts 1 and 2, to be served concurrently.

## II. DISCUSSION

### A.    Minor Role Reduction

On appeal, Montana-Batalla first argues that the district court erred by denying him a minor or minimal-role reduction.  We review for clear error a

district court's determination of a defendant's qualification for a role reduction. United States v. De Varon, 175 F.3d 930, 937 (11th Cir. 1999) (en banc).

The defendant has the burden of establishing his role in the offense by a preponderance of the evidence. Id. at 939. Two principles guide a district court's consideration: (1) the court must compare the defendant's role in the offense with the relevant conduct attributed to him in calculating his base offense level; and (2) the court may compare the defendant's conduct to that of other participants involved in the offense. Id. at 943-44. When the relevant conduct attributed to a defendant is identical to his actual conduct, he cannot prove that he is entitled to a minor-role adjustment simply by pointing to some broader criminal scheme for which he was not held accountable. Id. at 941.

The district court did not clearly err in refusing to grant Montana-Batalla a minor-role reduction. Under the first prong of the De Varon test, the district court held Montana-Batalla accountable for only the 10,500 kilograms of cocaine attributable to him. See De Varon, 175 F.3d at 942-43 ("Therefore, when a drug courier's relevant conduct is limited to her own act of importation, a district court may legitimately conclude that the courier played an important or essential role in the importation of those drugs.").

As to the second prong of the De Varon test, we reject Montana-Batalla's

argument that there must be a minor participant. Even if Montana-Batalla's role was less than that of some of the other participants, this Court stated in De Varon that the fact that a defendant's role is less than that of other participants involved does not automatically entitle him to a minor-role reduction because it is possible that none of the individuals is entitled to be a minor participant. De Varon, 175 F.3d at 944. Moreover, the district court specifically noted that it imposed the same sentence on Montana-Batalla as it imposed on other co-conspirators with the same role. Additionally, Montana-Batalla failed to present any evidence distinguishing his involvement from that of other crew members. Thus, the district court did not err in determining that Montana-Batalla did not qualify for a minor-role reduction.

## B. **Booker**

Montana-Batalla also argues that the district court failed to consider the factors in § 3553(a) in imposing his sentence. Montana-Batalla contends that, although the court was "appraised of [his] family and financial background, health, educational and vocational level, and lack of criminal history," it failed to take these factors into consideration.

In Booker, the Supreme Court held that the mandatory nature of the Sentencing Guidelines rendered them incompatible with the Sixth Amendment's

guarantee to the right to a jury trial. Id. at 749-51. The Supreme Court decided that the appropriate remedy was to excise two specific statutory provisions that made the Guidelines mandatory, thereby rendering the Guidelines advisory. Id. at 764. The Supreme Court explained that, "[w]ithout the 'mandatory' provision, the Act nonetheless requires judges to take account of the Guidelines together with other sentencing goals" contained in § 3553(a). Id. Section 3553(a) provides that district courts imposing a sentence must consider, inter alia, the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense; to promote respect for the law, and to provide just punishment for the offense, and the sentencing range established by the Guidelines. See 18 U.S.C. § 3553(a).

Post-Booker, we review sentences for unreasonableness. Booker, 125 S. Ct. at 765 (quotation and alteration omitted); see also United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005) (noting that "Booker established a 'reasonableness' standard for the sentence finally imposed on a defendant"). We recently held that "nothing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." United States v. Scott, – F.3d –, 2005 WL 2351020, at *4 (11th Cir. Sept. 27, 2005).

8

We conclude that Montana-Batalla's 135-month sentence is reasonable. As noted above, Montana-Batalla's sentence was within the Guidelines range, one of the explicit § 3553(a) factors. 18 U.S.C. § 3553(a)(4). As the Booker Court noted, "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Booker, 125 S. Ct. at 767. Further, it is clear the district court consulted the Guidelines as advisory and made an accurate computation of the Guidelines range.

The district court also considered the other § 3553(a) factors. The district court specifically considered the nature and circumstances of the offense and the history and characteristics of the defendant, including the probability that Montana-Batalla had committed the instant offense in an effort to provide for his family in Colombia. Further, the district court also considered Montana-Batalla's lack of criminal history and his stable work history.

And although the district court did not explicitly set forth each § 3553(a) factor, as discussed above, the district court was not required to do that. Scott, 2005 WL 2351020, at *4. In short, nothing in the record convinces us that the sentence was unreasonable in light of the § 3553(a) factors. We are satisfied under the circumstances of this case that the sentence was reasonable. United States v. Winingear, – F.3d –, 2005 WL 2077087, at *4 (11th Cir. Aug. 30, 2005)

(concluding sentence was reasonable in light of the Guidelines range and the other factors outlined in § 3553(a)).

Upon careful review of the record on appeal, and upon consideration of the parties' briefs, we discern no reversible error. Accordingly, we affirm Montana-Batalla's sentence.

**AFFIRMED.**