**[DO NOT PUBLISH]**

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

_____

**No. 05-11824**
**Non-Argument Calendar**

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 9, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 01-10055-CR-JCP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CESAR CABRERA,

Defendant-Appellant.

_____

**Appeal from the United States District Court**
**for the Southern District of Florida**

_____

**(December 9, 2005)**

Before BIRCH, MARCUS and WILSON, Circuit Judges.

**PER CURIAM:**

Cesar Cabrera appeals his 135-month sentence for various drug convictions.

He argues that the trial court erred when it failed to consider his injuries from a post-arrest motorcycle accident as a mitigating factor and thereby imposed an unreasonable sentence.   We AFFIRM.

## I.  BACKGROUND

Cabrera, in concert with three other men, smuggled 350 kilograms of cocaine from Bimini, Bahamas, into Key Largo, Florida.  He admitted to investigators that he helped transfer the cocaine onto his boat, concealed the cocaine in a secret compartment, and piloted the boat to Florida.  He reported that he was to receive 20 kilograms of the 350 as payment.  Cabrera provided a statement apologizing and taking full responsibility for his actions.

In March 2002, approximately seven months after he was arrested, Cabrera was involved in a motorcycle accident.  He suffered head trauma, including brain contusions and brain swelling, and was in a coma for twelve days.  He was subsequently treated for slurred speech, headaches, difficulty hearing in his left ear, memory loss, fluid on his brain, problems with his gait, and numbness to his extremities.  In July 2002, Cabrera was examined by a doctor who saw him again in April and September 2003.  The doctor found that Cabrera was at that time incompetent to stand trial but that his condition would likely improve.  As a result, the district court repeatedly continued Cabrera's case pending competency.

2

Eventually, the doctor changed his opinion and concluded that it was not likely that Cabrera would recover competency.

The government contested this finding and, in December 2003, Cabrera was ordered to undergo four months of neuropsychological treatment at a federal facility. Accordingly, Cabrera was admitted to the Mental Health Department, Federal Medical Center ("FMC") at Butner, North Carolina. While there, the FMC physicians diagnosed him with a mood disorder with depressive features and a cognitive disorder, both as a result of his closed head injury. He had average cognitive functioning, with weaknesses in attention and concentration, mental processing speed, and fine motor skills. However, the FMC physicians concluded that most areas of functioning were probably consistent with Cabrera's pre-injury levels and that Cabrera was therefore competent to stand trial. Cabrera did not contest their findings.

In October 2004, Cabrera pled guilty to (1) conspiracy to possess with intent to distribute cocaine, 21 U.S.C. § 846, (2) conspiracy to import cocaine, 21 U.S.C. § 963, (3) possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), and (4) knowingly and intentionally importing cocaine, 21 U.S.C. § 952(a). The probation officer assigned Cabrera a base offense level of 38, based on 350 kilograms of cocaine. She reduced it by two levels for specific offense

characteristics, resulting in an adjusted offense level of 36.  She further reduced it by another two levels for acceptance of responsibility, and an additional one level for assisting the authorities in the investigation for a total offense level of 33. Since Cabrera had no criminal history points and a criminal history category of I, the probation officer calculated a guideline imprisonment range of 135 to 168 months.

Cabrera's first objection to the PSI was that the probation officer should have used the 2000 Sentencing Guidelines manual instead of the 2004 manual because the 2000 manual was more generous as to downward departures.  This objection was not addressed in any subsequent filing, at the sentencing hearing, nor on appeal with our court.  Cabrera's second objection was to the probation officer's failure to recommend a downward departure under U.S.S.G. §§ 5H1.1, 5H1.4, and 5K2.0 in recognition of Cabrera's age and frail health.  Cabrera filed his objections on 27 December 2004, two and a half weeks before the United States Supreme Court issued its opinion in United States v. Booker, 543 U.S. ___, 125 S. Ct. 738 (2005), which held that the Sentencing Guidelines were advisory.

Sentencing took place on 14 March 2005, roughly two months after Booker was decided.  Cabrera, through counsel, asked the court to "fashion[] the appropriate sentence."  R5 at 6, 40.  He argued that he was no longer the same

4

person that had committed the underlying crime and that he was a "prime example as to why the courts should have discretion." Id. at 38-39. He further contended that his injuries from his motorcycle accident left him in an "extraordinary situation" that changed his "quality of life" and justified the imposition of "a reasonable sentence." Id. at 39.

Cabrera's doctor testified at the hearing regarding his post-accident health. The doctor testified, in pertinent part, that Cabrera has "an organically based personality condition . . . [presenting] difficulties with language based critical thinking . . . [and] balance and vestibular problems." R5 at 29. He further explained that:

> [T]his is as good as Mr. Cabrera is going to get or as good as he's going to be. He is going to have continuing problems with reasoning and judgment, concentration, [and] attention . . . . Since he does have this brain atrophy, his life expectancy levels drop . . . . [I]t's more likely that [he] will develop Alzheimer's disease or one of its variants or will become confused at an earlier age than the general population.

Id. at 27-28. On cross-examination the doctor admitted that no testing data existed that would allow him to compare Cabrera's current condition to his condition prior to the accident. He also confirmed that Cabrera could complete day-to-day functions, such as dressing and feeding himself. Further, he admitted that Cabrera would more likely take his medication in a monitored setting.

5

After the parties had concluded their arguments the district court judge adopted the findings of the Presentence Investigation Report and noted that the Sentencing Guidelines range was 135 to 168 months. The judge then stated:

> I have also considered the other factors. I think the advisory guidelines do provide a just and reasonable range in this case. While Mr. [Cabrera] has suffered a bad accident and has been in some ways dealt probably an unfair blow in terms of life, I don't see how I can, how that impacts the sentence.
> I don't think I am in a position to try to, I guess, factor in those things to try to make up for the fact that he was hurt. That is not something I can really do as a sentencing factor.
> I think the Bureau of Prisons does have facilities that are adequate to deal with his medical situation. Quality of life, you know, there's no way you can measure that and try to factor that into a sentencing regime. That one person is able to enjoy life more than another seems to be an impossible kind of thing to judge. And so I don't believe that these factors, although they are terribly important to Mr. [Cabrera], can impact the sentence.

R5 at 42. The judge proceeded to discuss other elements of the sentence, and later allowed Cabrera's counsel to "renew [his] objection that the guideline sentence in this case would not be reasonable." Id. at 44. Ultimately the judge sentenced Cabrera to 135 months of imprisonment at a facility that could meet his medical requirements, three years of supervised release, and a $400 special assessment.

On appeal, Cabrera argues that the district court, in rejecting his requests for a more lenient sentence on the basis of head injuries sustained in a post-arrest motorcycle accident, ignored the dictates of 18 U.S.C. § 3553(a)(1) by failing to

6

consider the history and characteristics of the defendant. Thus, he argues that a reasonable sentence would have taken his injuries into account and would therefore fall below the advisory Sentencing Guidelines range.[1]

## II. DISCUSSION

We "review sentencing decisions for unreasonableness." Booker, 543 U.S. at ___, 125 S. Ct. at 767; see United States v. Winingear, 422 F.3d 1241, 1245 (11th Cir. 2005) (holding that only the final sentence is reviewed, not the "individual decision[s] made during the sentencing process"). The reasonableness analysis "require[s] us to determine whether the sentence imposed by the district court was reasonable in the context of the factors outlined in [18 U.S.C. § 3553(a)]." Id. at 1246. Relevant section 3553(a) factors include:

> (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2)    [what is required for a sentence sufficient, but not greater than necessary, to comply with] the need for the sentence imposed--

---

[1] In his "Summary of the Argument" on appeal, Cabrera states that "[t]he trial court failed to consider factors other than the guideline range therefore making its adherence to the guideline range a mandatory sentencing scheme in violation of the recent dictates of Booker." Appellant's Br. at 9. However, the body of Cabrera's argument focuses entirely on the reasonableness of the sentence post-Booker. Accordingly, Cabrera has failed to raise the issue on appeal. United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) ("[A] party seeking to raise a claim or issue on appeal must plainly and prominently so indicate. Otherwise, the issue–even if properly preserved at trial–will be considered abandoned.") (citing Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (issue abandoned where only referenced in Statement of the Case)). Similarly, while Cabrera mentions the issue of a downward departure throughout his brief on appeal, it is only in reference to arguments made before the district court. While Cabrera may have argued for a departure below, on appeal he has failed to raise the argument, and it is therefore abandoned. Id.

(A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)    to afford adequate deterrence to criminal conduct;

(C)    to protect the public from further crimes of the defendant; and

(D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

. . .

(6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

18 U.S.C. § 3553(a).  In considering these factors the district court need not "state on the record that it has explicitly considered each of [the § 3553(a) factors] . . . or to discuss each of [them]."  United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005); see also id. ("Further, the district court explicitly acknowledged that it had considered [the appellant's] arguments at sentencing and that it had considered the factors set forth in § 3553(a). This statement alone is sufficient in post-Booker sentences." (emphasis omitted)).

The district court in this case correctly calculated the Sentencing Guidelines range and then applied a sentence at the bottom of that range.  In so doing it stated that it had "considered the other factors" and that it thought the advisory Sentencing Guidelines provided "a just and reasonable range in this case."  R5 at 42.  Further, it specifically noted that it believed "the Bureau of Prisons . . . [has]

facilities that are adequate to deal with his medical situation." Id. Thus, Cabrera's claim that the district court erred is without merit. He has not met his burden of showing that the court failed to consider the factors relevant to the selection of an appropriate sentence or that the sentence imposed was unreasonable, especially in light of the serious nature of his criminal convictions.

## III. CONCLUSION

Cabrera appeals his 135-month sentence for various drug convictions. He argues that the trial court erred when it failed to consider his injuries from a post-arrest motorcycle accident as a mitigating factor and imposed an unreasonable sentence. We conclude that the district court considered the relevant factors under 18 U.S.C. 3553(a) and imposed a reasonable sentence which fell within the advisory Sentencing Guidelines. Accordingly, the sentence imposed by the district court is **AFFIRMED**.