[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 8, 2006
THOMAS K. KAHN
CLERK

No. 05-16733
Non-Argument Calendar

_____

D. C. Docket No. 04-00554-CR-T-17-TGW

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JULIO ANTONIO DIAZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(September 8, 2006)**

Before ANDERSON, BIRCH and HULL, Circuit Judges.

PER CURIAM:

Julio Antonio Diaz appeals his 87-month sentence imposed after he pled

guilty to possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1). On appeal, Diaz argues that (1) he should have been granted a safety-valve reduction; and (2) his sentence is unreasonable. After review, we affirm.

## I. BACKGROUND

Beginning in early 2000, Wilfredo Torres began brokering drug deals in which Jamie Knott would purchase cocaine from Orlando Herrera at Torres's auto shop. By 2003, Herrera was delivering between 1.5 to 2 kilograms of cocaine every two weeks to Knott. In December 2003, the defendant Diaz, who was Herrera's driver, began driving Herrera to make these bi-weekly deliveries. On one occasion, Diaz met with Knott alone in order to pick up a kilogram of cocaine that was of inferior quality and return it to Herrera.

On November 3, 2004, Knott, who had been under surveillance, was stopped by law enforcement officers and agreed to cooperate in an investigation. As part of his cooperation, Knott called Torres and arranged to purchase two kilograms of cocaine from Herrera. On November 5, 2004, Knott met with Torres at his shop and was directed to pull his vehicle to the back of the lot where Herrera and Diaz were standing. In Diaz's presence, Herrera then showed Knott a bag containing the cocaine, and Torres told Knott to get his money. At that point, Torres, Herrera

2

and Diaz were arrested.

After initially pleading not guilty to all charges, Diaz later decided to plead guilty to one count of possession with intent to distribute 500 grams or more of cocaine. At his change-of-plea hearing, Diaz agreed with the government's factual proffer, including that (1) Diaz drove Herrera to deliver cocaine to Knott on November 5, 2004, as well as on at least five previous occasions; and (2) Diaz transported cocaine of inferior quality from Knott back to Herrera on at least one occasion. Herrera, who also was present at the hearing to change his plea, disagreed with the government's proffer and stated, in relevant part, that he and Diaz went to see Torres in order for Diaz to get a car.

After entering his plea, Diaz was interviewed by Drug Enforcement Administration ("DEA") Agent Robert Quinn. During this debriefing, Diaz denied ever making any other trips with Herrera for the purpose of transporting cocaine, and denied ever meeting Knott prior to the November 5, 2004 transaction. Diaz stated that it was his understanding that he and Herrera were meeting with Torres in order for Diaz to purchase a car, and that it was not until the last minute that Herrera told Diaz about the cocaine delivery.

The presentence investigation report ("PSI") recommended that Diaz be held accountable for at least thirty-two kilograms of cocaine, resulting in a base offense

level of 34 pursuant to U.S.S.G. § 2D1.1(c)(3). The PSI noted that Diaz was not entitled to a reduction in his offense level, pursuant to § 2D1.1(b)(7), because he did not truthfully provide information to the government regarding his offense, and therefore, did not meet the criteria for the safety-valve reduction set forth in U.S.S.G. § 5C1.2(a)(1)-(5). The PSI also declined to reduce Diaz's offense level, pursuant to U.S.S.G. § 3B1.2, based on his role in the offense. With a criminal history category of I, Diaz's recommended advisory Guidelines range was 151 to 188 months' imprisonment. Diaz objected to the PSI's (1) determination of the amount of drugs attributed to him; (2) denial of the safety-valve reduction; and (3) denial of a minor-role adjustment.

At the sentencing hearing, after hearing the testimony of Torres and Agent Quinn, the district court (1) overruled Diaz's objection as to the drug quantity; (2) found that Diaz was not entitled to the safety-valve reduction; and (3) granted Diaz a two-level reduction for his role in the offense, which also resulted in a three-level reduction to Diaz's base offense level, pursuant to U.S.S.G. § 2D1.1(a)(3). Specifically, with regard to the safety-valve reduction, the district court found that Diaz had not provided a candid and truthful debriefing to the DEA given that Diaz (1) maintained that he had never participated in Herrera's previous drug deals with Knott; and (2) denied ever meeting Knott before the November 5,

4

2004 transaction. Accordingly, the district court found that Diaz's offense level was 29, and his resulting Guidelines imprisonment range was 87 to 108 months.

Diaz requested that the district court, in light of the fact that the Guidelines were advisory, take into consideration the sentencing factors in 18 U.S.C. § 3553(a) and sentence him below the Guidelines range. Specifically, Diaz argued that he posed no danger to the community, he was not likely to be a recidivist, and a lower sentence would accomplish the sentencing goals of § 3553(a).

The district court acknowledged that Diaz had no prior arrests and noted that it had considered both the advisory Guidelines range and the § 3553(a) factors. The court indicated that cocaine trafficking was a serious crime and that Diaz's punishment should reflect the seriousness of that offense. The court also noted that the minor-role adjustment took into account the characteristics of the defendant. Finally, the court considered the fact that Diaz had not truthfully debriefed, and it recognized the need for the sentence to deter similar conduct. The court sentenced Diaz to 87 months' imprisonment, the low-end of the Guidelines range, and 5 years' supervised release.

## II. DISCUSSION

### A. Safety-valve

On appeal, Diaz asserts that he truthfully provided information concerning his offense conduct during his debriefing with the DEA, and therefore, contends that he qualified for the safety-valve reduction.[1]

The Sentencing Guidelines provide for a two-level reduction to a defendant's offense level if he meets the criteria for the safety-valve reduction set forth in U.S.S.G. § 5C1.2. See U.S.S.G. § 2D1.1(b)(7). It is undisputed that Diaz satisfies the first four criteria of § 5C1.2 in this case. The parties dispute, however, whether Diaz satisfied § 5C1.2(a)(5), which requires that "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . ." U.S.S.G. § 5C1.2(a)(5). The defendant bears the burden of proof at sentencing on the truthfulness issue. See United States v. Espinosa, 172 F.3d 795, 797 (11th Cir. 1999).

---

[1]We review a district court's factual determinations regarding a defendant's eligibility for the safety-valve reduction for clear error. United States v. Cruz, 106 F.3d 1553, 1557 (11th Cir. 1997); see also United States v. Brownlee, 204 F.3d 1302, 1305 (11th Cir. 2000) ("The question of whether the information [the defendant] supplied to the government . . . was truthful and complete . . . is a factual finding for the district court.").

We conclude that the district court did not clearly err in determining that Diaz failed to truthfully provide all the information he had concerning his offense conduct to the government before his sentencing hearing and, therefore, that he was not eligible for the safety-valve reduction. During his debriefings with the DEA, Diaz maintained that he had never participated in Herrera's previous drug deals with Knott and denied ever meeting Knott before the November 5, 2004 transaction. These assertions, however, are inconsistent with the other evidence in the record and the facts admitted by Diaz at his change-of-plea hearing, which show that Diaz had driven Herrera to deliver cocaine to Knott on at least five other occasions, and that Diaz transported cocaine of inferior quality from Knott back to Herrera on at least one occasion. Given these inconsistencies, we cannot say that the district court clearly erred in making the factual determination that Diaz failed to provide a truthful and candid debriefing to the DEA. Accordingly, we affirm as to this issue.[2]

**B.      Reasonableness**

Diaz also argues that his 87-month sentence is unreasonable, claiming that a

---

[2]We also reject Diaz's argument that he is entitled to the safety-valve reduction because he attempted to meet with Agent Quinn one more time before his sentencing hearing but was unable to do so. According to Diaz, this failed meeting denied him the opportunity to provide a truthful debriefing before sentencing. Given the speculative nature of what Diaz might have said at the meeting, and the fact that Diaz already had met with Agent Quinn on three previous occasions, we find no merit to this argument.

lesser sentence would have been sufficient, but not greater than necessary, to achieve the purposes of sentencing.

After United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), a district court, in determining a reasonable sentence, must correctly calculate the sentencing range under the Guidelines and then consider the factors set forth in 18 U.S.C. § 3553(a). See United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005).[3]

We review a defendant's ultimate sentence for reasonableness in light of the § 3553(a) factors. See United States v. Winingear, 422 F.3d 1241, 1246 (11th Cir. 2005). This "[r]eview for reasonableness is deferential. . . . and when the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one." Talley, 431 F.3d at 788. "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both [the] record and the factors in section 3553(a)." Id.

---

[3]"The factors in § 3553(a) include: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (4) the need to protect the public; and (5) the Guidelines range." United States v. Scott, 426 F.3d 1324, 1328-29 (11th Cir. 2005) (citing 18 U.S.C. § 3553(a)). "[N]othing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." Id. at 1329. Instead, indications in the record that the district court considered facts and circumstances falling within § 3553(a)'s factors will suffice. Id. at 1329-30; Talley, 431 F.3d at 786.

After review, we conclude that nothing in the record shows that Diaz's 87-month sentence is unreasonable. First, the district court correctly calculated the advisory Guidelines range and indicated that it had considered the § 3553(a) factors, including the seriousness of the offense; Diaz's history and characteristics, such as his lack of criminal history and his limited role in the offense; the Guidelines range; and the need for the punishment to provide deterrence. The district court then imposed a sentence at the low-end of the advisory Guidelines range and less than one-fifth of the statutory maximum sentence of 40 years' imprisonment, both of which are indications of a reasonable sentence. See Talley, 431 F.3d at 788 (noting that "ordinarily we would expect a sentence within the Guidelines range to be reasonable"); Winingear, 422 F.3d at 1246 (comparing the sentence imposed to the statutory maximum in determining its reasonableness); 21 U.S.C. § 841(b)(1)(B)(ii). Finally, none of the § 3553(a) factors cited by Diaz in support of a lesser sentence establishes that his 87-month sentence is unreasonable. Accordingly, we affirm as to this issue.

### III. Conclusion

Based on the foregoing reasons, we affirm Diaz's 87-month sentence.

**AFFIRMED**.