[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 13, 2006
THOMAS K. KAHN
CLERK

No. 06-11054
Non-Argument Calendar

_____

D. C. Docket No. 05-00139-CR-ORL-28DAB

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEYSHA NACOLE JONES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(November 13, 2006)**

Before BIRCH, BARKETT and HULL, Circuit Judges.

PER CURIAM:

A jury convicted Keysha Nacole Jones of aiding and abetting in possessing

with intent to distribute five grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2 and aiding and abetting in possessing a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. §§ 924 (c)(1)(A) and 2. After being convicted of these two offenses, Jones pled guilty to possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). On appeal, Jones argues that: (1) the evidence was insufficient to support her jury convictions; (2) the district court erred in denying her a minor-role reduction; and (3) her sentence was unreasonable. After review, we affirm.

## I. BACKGROUND

Defendant Jones leased a rental home at 460 Easy Street, Merritt Island, Florida. Jones was the only person on the lease. Defendant Jones and her boyfriend, Tarrance Williams, were living together in 2004 when the Brevard County, Florida Sheriff's Office was investigating Williams for cocaine distribution. After a confidential informant bought cocaine from Williams, sheriff's deputies obtained a warrant to search Jones's house. On December 2, 2004, deputies entered Jones's house. Upon questioning, Jones told a deputy that guns were in her bedroom. The deputies found items in Jones's master bedroom evidencing drug activity, including: (1) a children's shoebox (later found to have Jones's fingerprint on it) under her bed that contained a digital scale and 369.5

2

grams of cocaine; (2) a women's shoebox (later found to have Williams's fingerprint on it), also under her bed, that contained two loaded semiautomatic handguns;[1] (3) a partially used box of plastic sandwich baggies tucked among women's clothing in a dresser; and (4) two or three thousand dollars in a sock tucked in a shoe in a shoebox in the closet. Additionally, the master bedroom door had a lock on it, to which only Jones and Williams had keys. Deputies arrested Williams the same day, and when they brought him to the house, Williams claimed he owned "everything."

On December 4, Williams called Jones from jail. Prior to connecting with each other, they were informed the phone call was being recorded. During the conversation, Jones asked Williams whether the guns were registered to anyone. Williams replied that he did not know and that he had bought them on the street. Williams asked Jones to use his cell phone to "alert" one of his contacts, and instructed Jones to call "Jim" and then his brother. Jones used three-way calling to connect them to Williams's brother, and they all discussed Williams's associates.

On December 6, defendant Jones met with Deputy Brannon at the Sheriff's Office. Jones told Brannon that on December 1, her brother had brought the two firearms to her house, and she was storing them for him. Jones said she did not

---

[1]The two handguns were a nine millimeter Glock semiautomatic and a nine millimeter Ruger semiautomatic.

know if Williams knew about the guns. Jones was then arrested.

On August 17, 2005, a federal grand jury indicted Jones and Williams for aiding and abetting each other in possessing with intent to distribute five grams or more of cocaine and in possessing a firearm in furtherance of a drug trafficking offense. Jones was also indicted for possession of a firearm by a convicted felon. Before trial, Williams pled guilty and was sentenced to 100 months' imprisonment.

Before Jones's trial, the court severed the charge for possession of a firearm by a convicted felon from the two other charges, which then proceeded to trial. At the jury trial on Jones's two counts of aiding and abetting, the sheriff's deputies testified about finding the cocaine, digital scales, sandwich baggies, cash, and guns in Jones's house. The government also played a recording of the December 4 telephone call between Williams and Jones. Additionally, a Drug Enforcement Administration expert in cocaine trafficking testified that digital scales and plastic baggies are tools of the drug trade, and that drug dealers usually have large amounts of cash on hand to purchase drugs and keep loaded firearms to protect the drugs and cash. He testified that the amount of cocaine found in the house was worth approximately $9,000 wholesale, and was too large for personal use. He opined that at one point in the recorded phone conversation, Williams and Jones were discussing one of Williams's drug associates who had fled to Georgia after

4

the search warrant was executed.

Williams testified on behalf of Jones, claiming that all the drugs, scales, and guns were his; that he put the drugs in the shoeboxes when Jones was gone; and that Jones did nothing to help him distribute cocaine. Williams said that the cash found in the sock in the closet was Jones's money from the Federal Emergency Management Agency. Williams refused to answer most of the questions about his drug dealing activities.

The jury found Jones guilty of both aiding and abetting counts. Jones then pled guilty to possession of a firearm by a convicted felon. The Presentence Investigation Report ("PSI") assigned Jones a base offense level of 22 based on a drug quantity of 369.5 grams of cocaine, 15 grams of marijuana, and 750 milligrams of MDMA (ecstacy), all reportedly found in her bedroom, resulting in a total marijuana equivalency of 74.29 kilograms. See U.S.S.G. § 2D1.1(c)(9) & cmt. n.6. At sentencing, the district court sustained Jones's objection to using the other substances and used only the 369.5 grams of cocaine to calculate her offense level. The cocaine alone still resulted in a base offense level of 22. The court denied Jones's minor-role reduction. Jones did not object to her criminal history category of II as she had three prior convictions, including a prior conviction for possession of cocaine.

Jones's offense level of 22 and her criminal history category of II resulted in an advisory Guidelines range of 46 to 57 months for her offenses of aiding and abetting possession of cocaine with intent to distribute and possession of a firearm by a convicted felon.[2] Jones's conviction for aiding and abetting possession of a firearm in furtherance of a drug trafficking offense carried a mandatory consecutive sentence of at least 5 years.

The district court sentenced Jones to a 46-month sentence for her convictions for aiding and abetting possession of cocaine and possession of a firearm by a convicted felon, and a 5-year mandatory consecutive sentence for her conviction for possession of a firearm in furtherance of a drug trafficking offense, resulting in a total of 106 months' imprisonment. Jones timely appeals her convictions and sentence.

## II. DISCUSSION

### A. Convictions for aiding and abetting

Jones first argues that the evidence was insufficient to prove that she aided and abetted Williams in possessing cocaine with the intent to distribute. Jones

---

[2]In calculating the applicable advisory Guidelines range, the PSI grouped together Jones's convictions for aiding and abetting possession of cocaine with intent to distribute ("Count Two") and for possession of a firearm by a convicted felon ("Count Five"). The PSI stated that these counts were grouped together pursuant to U.S.S.G. § 3D1.2(c), "because Count Five embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to Count Two."

6

claims that there was no evidence that she shared Williams's intent to distribute the cocaine or that she helped distribute it.[3]

"[T]o sustain the convictions for aiding and abetting, the prosecution must show that the defendant associated himself with a criminal venture, participated in it as something he wished to bring about and sought by his actions to make it succeed." United States v. Bain, 736 F.2d 1480, 1487 (11th Cir. 1984) (quotation marks and citations omitted). Further, "in a prosecution for aiding and abetting possession of cocaine with intent to distribute, there must be evidence connecting the defendant with both aspects of the crime, possession and intent to distribute." United States v. Longoria, 569 F.2d 422, 425 (5th Cir. 1978).[4]

Jones concedes that the government established the first element, possession. Moreover, as to the "intent to distribute" element, we conclude that a reasonable jury could have determined that Jones wished and acted to help Williams distribute the drugs. Jones allowed Williams to live with her and provided him with a safe place to store his drugs and conduct his drug-related activities. Jones rented the house solely in her name, allowed Williams to move in, permitted Williams to

---

[3]We review the sufficiency of the evidence de novo, drawing all reasonable inferences and credibility choices in favor of the government and the jury's verdict. See United States v. Garcia, 405 F.3d 1260, 1269 (11th Cir. 2005).

[4]This Court adopted as binding precedent all Fifth Circuit decisions rendered prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

store cocaine and weapons under her bed and to have locks installed to the master bedroom, and then Jones, exclusively with Williams, maintained the keys to protect the cocaine, weapons, and cash. The quantity of cocaine, which Jones concedes she possessed, is too large for personal use, and the jury reasonably could have inferred from the quantity an intent to distribute the cocaine. See United States v. Perez-Tosta, 36 F.3d 1552, 1559 (11th Cir. 1994).

The jury also could have inferred that Jones assisted in packaging the cocaine, as Jones's fingerprints were found on the shoebox containing the cocaine and the sandwich baggies were found among her clothes. Finally, in the recorded telephone conversation, Jones demonstrated knowledge of Williams's drug dealing activities, and the jury was entitled to infer that Jones facilitated those activities. The evidence is sufficient to support the jury's verdict that Jones aided and abetted Williams in possessing cocaine with the intent to distribute.

Jones next argues that her knowledge of the location of the guns, found under her bed, was not sufficient to prove that she facilitated Williams's possession of the guns. To prove Jones aided and abetted Williams in possessing a firearm in furtherance of a drug trafficking offense, in addition to establishing knowledge, the government must show some proof linking Jones to the guns. See Bazemore v. United States, 138 F.3d 947, 949 (11th Cir. 1998). Here again, the jury had

8

sufficient evidence to find that Jones enabled Williams's possession, permitting Williams to store the guns under her bed and lock the bedroom door. Moreover, the guns were stored in close proximity to the drugs and scales which, as discussed above, the government sufficiently linked with Jones. Jones also lied to investigators about the guns, claiming that she was storing the guns for her brother. The jury was entitled to consider her lies as evidence of guilt. Thus, the evidence is sufficient to support the jury's verdict that Jones aided and abetted Williams in possessing a firearm in furtherance of a drug trafficking offense.

**B. Minor-role reduction**

Jones also argues that the district court clearly erred in finding that she was not entitled to a minor-role reduction.[5] Jones contends she should receive a minor-role reduction pursuant to U.S.S.G. § 3B1.2(b) because she did not procure, pay for, or exercise control over the drugs, or claim any proceeds from the drug sales.

The defendant bears the burden of proving her minor role. United States v. De Varon, 175 F.3d 930, 939 (11th Cir. 1999) (en banc). In assessing a defendant's role in an offense, the district court first "measure[s] the defendant's role against the relevant conduct" attributed to her in calculating her base offense level. Id. at 940-41. If this prong is satisfied, the district court then compares the

---

[5]We review a district court's determination of a defendant's role in an offense for clear error. United States v. De Varon, 175 F.3d 930, 937 (11th Cir. 1999) (en banc).

9

defendant's relative culpability with that of any other participants. Id. at 944.

Here, the "relevant conduct" attributed to Jones was possessing 369.5 grams of cocaine. At sentencing, Jones was held responsible only for her actual conduct–aiding and abetting the possession of the 369.5 grams of cocaine–and not for any larger conspiracy. Thus, Jones's relevant conduct is equivalent to her actual conduct. Further, Jones rented the home in issue and locked her master bedroom, where the drugs and guns were stored in her shoeboxes under her bed. Accordingly, the district court did not clearly err in denying Jones a minor-role reduction. See id. at 941.

## C. Reasonableness of the sentence

Finally, Jones asserts that her sentence under the advisory Guidelines was unreasonable.[6] Jones argues that the district court failed to appreciate the impact of the 5-year mandatory minimum sentence for her conviction under 18 U.S.C. § 924(c)(1)(A) on her overall sentence. Jones also argues that the 106-month total sentence is longer than necessary under 18 U.S.C. § 3553(a), because she can be deterred and rehabilitated by a shorter sentence and because it creates an unwarranted sentencing disparity with Williams's 100-month sentence. Because the district court was required to sentence Jones to the 5-year consecutive sentence,

---

[6]We review a defendant's entire sentence for unreasonableness in light of the 18 U.S.C. § 3553(a) factors. See United States v. Winingear, 422 F.3d 1241, 1246 (11th Cir. 2005).

Jones is really arguing that the district court erred by not going below the advisory Guidelines range of 46 to 57 months on her other two offenses.

Under United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), the district court must follow a two-step process in determining a defendant's sentence. United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005). First, the district court must consult the Guidelines and correctly calculate the range. Id. Jones does not contest that the district court correctly calculated her advisory Guidelines range of 46 to 57 months' imprisonment. Second, the district court must consider the factors listed in 18 U.S.C. § 3553(a). Id. In this case, the district court stated that it considered all the 18 U.S.C. § 3553(a) sentencing factors; specifically considered the nature and circumstances of the offense, Jones's personal history and characteristics, pertinent policy statements, and the kind of sentences available; imposed a sentence at the low end of the Guidelines range; and found that the sentencing disparity was warranted, because Williams pled guilty and received a reduction for acceptance of responsibility. Thus, we cannot say that Jones's sentence was unreasonable.

### III. CONCLUSION

Based upon the foregoing, we affirm Jones's convictions and sentence.

**AFFIRMED**.