[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 4, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14435
Non-Argument Calendar

_____

D. C. Docket No. 05-00026-CR-1-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTOINE DEMETRIUS MOTON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(April 4, 2007)**

Before ANDERSON, CARNES and BARKETT, Circuit Judges.

PER CURIAM:

Our previously issued opinion in this case is rescinded, and this one is issued

in its place.

The district court, in sentencing Antoine Demetrius Moton to a prison term above the advisory guidelines range for Moton's total offense level, achieved via a variance what it could have done through a departure. Had the district court applied an upward departure, Federal Rule of Criminal Procedure 32(h) would have required the court to give the parties reasonable notice that it was contemplating such a departure. Because the court used a variance to impose a sentence that exceeded the guidelines range it was not required to give notice. See United States v. Irizarry, 458 F.3d 1208 (11th Cir. 2006). Moton contends that we ought to require district courts to use a departure where either a departure or variance would reach the same result, because when a district court chooses a variance instead of a departure the defendant is deprived of the right to advance notice under Rule 32(h). Because Moton did not make this argument before the district court, we review only for plain error. Finding none, we affirm.

## I.

Moton pleaded guilty to possessing counterfeit currency and conspiring to pass counterfeit currency in violation of 18 U.S.C. §§ 371 and 472. Although Moton possessed the fake currency as part of a scheme to acquire drugs, the government agreed as part of a plea agreement not to pursue drug charges. The

2

presentence investigation report calculated an offense level of 14 and a criminal history category of VI, which produced an advisory guidelines range of 37 to 46 months.

Moton has an extensive criminal history. The PSI listed 6 juvenile convictions ranging from simple battery to fleeing the police. Moton received no criminal history points for these convictions. The PSI further listed 16 adult convictions ranging from simple battery to armed robbery. It assigned Moton 22 criminal history points for his adult convictions. Moton argues that he should have received one fewer point, but concedes that even with this reduction he has easily accumulated the 13 criminal history points necessary to qualify for a criminal history category of VI.

At the sentence hearing, Moton's counsel stated that he had no objections to the calculations in the PSI but asked the court to take into account the fact that he had pleaded guilty. The government then argued for the first time that a sentence within the guidelines range would be unreasonable. It presented three reasons for its position: (1) the illegal conduct involved a scheme to purchase drugs; (2) Moton had a very long criminal history; and (3) the evidence indicated that Moton was more culpable than a codefendant whose sentencing range was more than double Moton's range.

After hearing from the parties, the district court imposed a sentence of 100 months imprisonment for possessing counterfeit currency and a concurrent sentence of 60 months imprisonment for attempting to pass counterfeit currency. The court explicitly stated that in imposing the sentence, it had "taken into consideration [§] 3553." The district court indicated that it was probably being too lenient with the defendant. The court said that prior to the adoption of the sentencing guidelines, it would have sentenced Moton at or near the statutory maximum, but the advisory guidelines had tempered its judgment, and it found that a sentence in between the guidelines range and the statutory maximum would be reasonable.

The court declined to sentence Moton for any drug offenses to which he had not pleaded guilty, but said that it had considered the fact that the counterfeit money was to be used for drugs. However, it stated that Moton's criminal history was a more important factor in its sentencing decision.

Moton raises two arguments on appeal: First, he contends that the district court erred by failing to state whether it was departing upwards under United States Sentencing Guidelines (Nov. 2005) § 4A1.3 or making a variance under United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005). If the district court meant to apply a variance under Booker, Moton argues that it erred by failing to

4

first apply a § 4A1.3 departure. If the court meant to depart upward under § 4A1.3, Moton argues that it failed to follow the correct procedure in so doing. Second, Moton contends that his sentence is unreasonable. Because Moton presents his Rule 32(h) objection for the first time on appeal, we review it for plain error. United States v. Olano, 507 U.S. 725, 732, 113 S. Ct. 1770, 1776 (1993). Under plain error review, Moton must show: (1) error; (2) that is plain; (3) that affected his substantial rights; and (4) that seriously affected the fairness and integrity of the proceedings. Id. We review his sentence for reasonableness. United States v. Winingear, 422 F.3d 1241, 1244 (11th Cir. 2005)

## II.

Moton begins arguing his first contention by characterizing the district court as being unclear about whether it was applying a variance under § 3553(a) or a departure under U.S.S.G. § 4A1.3. We think the district court made clear that it was applying a variance. It expressly indicated "that the court ha[d] taken into consideration [§] 3553." We have never held that the term "variance" is a magic word that district courts must utter during sentence hearings. Although we have used "variance" to distinguish sentences based on § 3553 factors from departures, see, e.g., Irizarry, 458 F.3d at 1211, the term "variance" does not appear in Booker, nor is it the only term used by the federal courts to describe a sentence not based

exclusively on the guidelines. See, e.g., United States v. Crosby, 397 F.3d 103, 111 n.9 (2d Cir. 2005) (referring to a "non-Guidelines" sentence).

Because the district court applied a variance, it was under no obligation to give Moton advance notice of that variance under Rule 32(h). See Irizarry, 458 F.3d at 1212 ( "After Booker, parties are inherently on notice that the sentencing guidelines range is advisory . . . . [P]arties cannot claim unfair surprise or inability to present informed comment . . . when a district court imposes a sentence above the guidelines range based on the section 3553(a) sentencing factors."). However, Moton contends for the first time on appeal that the district court could have just as easily applied an upward departure under § 4A1.3. Subsection (a)4(B) of that provision provides:

> UPWARD DEPARTURES FROM CATEGORY VI.—In a case in which the court determines that the extent and nature of the defendant's criminal history, taken together, are sufficient to warrant an upward departure from Criminal History Category VI, the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History VI until it finds a guidelines range appropriate to the case.

The district court varied upward primarily because Moton's criminal-history points amply exceeded the minimum necessary for him to qualify for criminal history category VI. This same reason, according to Moton, could have warranted an upward departure under § 4A1.3.

6

Had the district court applied § 4A1.3, Moton would have been entitled to advance notice of that possibility. Federal Rule of Criminal Procedure 32(h) requires that:

> Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.

Fed. R. Crim. P. 32(h). Moton argues that the district court should have applied § 4A1.3, because even after Booker district courts have an obligation to correctly calculate the appropriate advisory guidelines range. See United States v. Crawford, 407 F.3d 1174, 1178 (2005) ("This consultation requirement, at a minimum, obliges the district court to calculate correctly the sentencing range prescribed by the Guidelines." (emphasis in original)). Moreover, he says that by reading Irizarry to apply to variances in situations where the district court might have achieved a similar sentence via the application of a departure, the district court created an asymmetry in which the defendant's right to notice turned on how the court chose to characterize its decision making process. If the court had said that it was applying a departure, the defendant would have been entitled to notice, but because the court said it was using a variance, the defendant loses that procedural right.

7

If there is error here, it is certainly not plain. "Plain" is "a term synonymous with 'clear' or, equivalently, 'obvious.'" Olano, 507 U.S. at 725, 113 S. Ct. at 1773. We have "repeatedly recognized" that "an error cannot meet the 'plain' requirement of the plain error rule if it is not clear under current law." United States v. Chau, 426 F.3d 1318, 1322 (11th Cir. 2005) (internal quotation marks omitted). When "the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." Id. (quoting United States v. Lejarde-Rada, 319 F.3d 1288, 1291 (11th Cir. 2003)).

To prevail under plain error review, Moton would need to establish that at least one of two principles is clear under current law: (1) that district courts have an obligation under Booker to sua sponte apply upward departures under § 4A1.3 (and hence to provide notice under Rule 32(h)); or (2) that there is an exception to Irizarry in cases in which a departure might be applicable. Neither principle is clearly established under current law.

It is true that in Crawford we said that Booker's requirement that district courts "consult" with the guidelines "at a minimum, obliges the district court to calculate correctly the sentencing range prescribed by the Guidelines." Crawford, 407 F.3d at 1178 (emphasis in original). However, that statement is a far cry from

8

a clear rule requiring that district courts apply departures under § 4A1.3 even when neither party requests that it do so. Crawford simply "requires the sentencing court to calculate the Guidelines sentencing range in the same manner as before Booker." Id. Moton has not presented any case law suggesting that prior to Booker, application of § 4A1.3, which the guidelines describe as a "policy statement," was mandatory. To the contrary, we have used permissive language to describe the district courts' obligation under that provision. See United States v. Simmons, 368 F.3d 1355, 1341 (11th Cir. 2004) (stating that § 4A1.3 "permits district courts to make upward departures" under limited circumstances). He also has not cited any decision supporting the principle that the district court must apply an upward departure under § 4A1.3 on its own initiative even if it is not requested to do so by the government (a claim to which most criminal defendants would vociferously object). Nor has Moton cited a decision holding that the failure to apply an upward departure under § 4A1.3 sua sponte constitutes reversible error.

Since the district court did not clearly err by failing to apply a sua sponte departure under § 4A1.3, Moton can only establish plain error if current law clearly establishes an exception to Irizarry in cases in which a departure might be applicable. We have not yet cited Irizarry in a published opinion, so the only case that could clearly establish that principle is Irizarry itself. Yet, if anything, Irizarry

9

implies the opposite, because reading such an exception into the case would effectively thwart the decision. All variances under § 3553(a) could be recast as departures under the sentencing guidelines. For example, under § 5K2.0(a)(2), the district court may take into account any circumstance specifically identified in the guidelines, § 5K2.0(a)(2)(A), and any circumstance "not identified in the guidelines but that nonetheless is relevant to determining the appropriate sentence." § 5K2.0(a)(2)(B). In other words, any circumstances relevant to sentencing can be used to justify a departure. That means, under Moton's theory, Irizarry contradicts itself and can have no application to any case. We decline to read it that way.

### III.

Moton's second contention is that his sentence was unreasonable. "After the district court has accurately calculated the [g]uideline range, it may impose a more severe or more lenient sentence that we review for reasonableness." Winingear, 422 F.3d at 1244 (citation quotation marks omitted). Such review is deferential, requiring us to "evaluate whether the sentence imposed by the district court fails to achieve the purposes of sentencing as stated in Section 3553(a)." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). "There is a range of reasonable sentences from which the district court may choose. . . ." Id. We will not review

10

"each individual decision made during the sentencing process" for reasonableness, but only the "final sentence." Winingear, 422 F.3d at 1245.

Moton's criminal history implicated several of the § 3553(a) factors, including the history and characteristics of the defendant, the need for the sentence to promote respect for the law, and the need to protect the public from further crimes of the defendant. That the counterfeit money was to be used for drugs speaks to the nature and circumstances of the offense. The court also considered the need to avoid unwarranted sentence disparities, noting that Moton's codefendant, Charles Timothy Styles, had received a much harsher sentence.

Moton's specific criticism of the sentence centers on the district court's statement that it believed that the guidelines inadequately address the problems posed by defendants with extensive criminal histories. But a district court's conclusion that the sentence should not be what the guidelines range indicates is not error; it is the premise behind variances. The district court considered the § 3553(a) factors and imposed a sentence that was still well below the statutory maximum.

Moton also argues that the district court should not have considered drug offenses to which he did not plead guilty. The district court expressly stated that it was not sentencing Moton as if he had committed those offenses. The court

11

merely took cognizance of the fact that the crime for which it was sentencing Moton—counterfeiting—was connected with the sale of drugs. This fact is probative of "the nature and circumstances of the offense" under § 3553(a).

**AFFIRMED.**