[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**August 30, 2005**
**THOMAS K. KAHN**
**CLERK**

_____

No. 05-11198
Non-Argument Calendar

_____

D. C. Docket No. 04-00004-CR-CG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SCOTT A. WININGEAR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(August 30, 2005)**

Before TJOFLAT, DUBINA and PRYOR, Circuit Judges.

PER CURIAM:

Scott Winingear appeals his two-year sentence for mail fraud in violation of

section 1341 of Title 18 of the United States Code. Winingear argues that his sentence was unreasonable because the district court did not depart downward by the amount of time Winingear already served in state prison for resisting arresting officers and threatening to murder them. Although we lack jurisdiction to review the decision of the district court not to depart downward, we affirm as reasonable the sentence imposed by the district court.

## I. BACKGROUND

In January 2004, Winingear was indicted in the Southern District of Alabama on nineteen counts of mail fraud. Winingear was arrested in Louisville, Kentucky, on the fraud charges and placed under noncustodial supervision of Pretrial Services. Shortly thereafter, Winingear was arrested by Kentucky police for several traffic violations, giving an officer a false name and address, and possession of a forged instrument. He was released on his own recognizance the next day. Because this arrest constituted a violation of Winingear's pretrial release, a bench warrant was issued for his arrest.

On February 18, 2004, a police officer in Clarkesville, Indiana, recognized Winingear as wanted and attempted to arrest him. After an altercation, Winingear fled. When pursuing officers cornered Winingear, he drew a knife and threatened to kill an officer. Winingear then attempted to steal a truck, failed, and entered a

2

nearby business. The officers chased Winingear into the business, where Winingear sprayed an officer in the face with a fire extinguisher before the officers subdued him. Winingear pleaded guilty in Indiana state court to resisting law enforcement and was sentenced to a term of twelve months in prison. Winingear served six months of his sentence in Indiana before he was returned to federal custody for arraignment and plea in the Southern District of Alabama on the nineteen counts of mail fraud.

Winingear pleaded guilty to one count of the indictment. Winingear admitted defrauding people by advertising laptops on eBay and Yahoo!, accepting payment from his victims, and never sending them the promised laptop or refunding their money. Winingear admitted that his fraudulent scheme cost his victims about $19,600.

Winingear's Presentence Investigation Report recommended a two-point enhancement for obstruction of justice based on Winingear's threats and assault on the arresting officers in Indiana. The PSI also recommended that Winingear not receive credit for acceptance of responsibility due to revocation of his bond and arrest for new criminal activity while awaiting trial. Although Winingear states, and the government does not dispute, that the PSI also recommended two criminal history points for his 2004 Indiana conviction, a close review of the PSI reveals

3

that Winingear received no criminal history points for his 2004 Indiana conviction. Winingear received one criminal history point for a conviction for forgery in April 1998 in Marion County, Indiana, and another criminal history point for a conviction for domestic battery in January 2000 also in Marion County. He received two additional criminal history points because he carried out his mail fraud while under a sentence from the January 2000 conviction, for a total of four criminal history points. The PSI specifically stated that Winingear received no criminal history points from his 2004 Indiana conviction because the offense conduct underlying that conviction formed the basis for the obstruction of justice enhancement and was, therefore, related conduct.

At the sentencing hearing, Winingear moved for a downward departure to reduce his sentence by the six months he served in Indiana prison for his 2004 conviction. Winingear argued that his 2004 Indiana conviction had already been taken into account in determining his Guideline range, and that the district court could give him a downward departure to reflect that. The district court denied the motion: "I understand that [the 2004 conviction was used in calculating Winingear's Guideline range]. But since I wouldn't be inclined to give him a concurrent sentence for that conduct, I don't feel inclined to give him a downward departure for that either." The remainder of the sentencing hearing focused

primarily on Winingear's unsuccessful motion for a downward departure based on his health problems.

During the sentencing hearing, Winingear's counsel stated that she was "trying to get away from the guideline framework in light of the Booker and Fanfan cases," and that she "believe[d] it would be unreasonable in light of [Winingear's] medical situation." The district court responded by stating that, "[i]n the guideline realm, I don't believe that a downward departure is appropriate. And that's what I'm going to find." The district court sentenced Winingear to twenty-four months of imprisonment. Winingear objected and argued that the sentence of the district court was unreasonable because it was based on an unreasonable and arbitrary element of the Guidelines:

> [I]t was unreasonable not to credit Mr. Winingear with the six months that he served in Indiana based upon . . . the mandate of 5G1.3(b) specifically indicating that because the conduct was taken into account in establishing his guideline range that it's mandatory that . . . be sentenced. [I]n light of the fact that the Court did rely upon the guidelines in its framework, that . . . establishes unreasonableness in the fact that mandatory concurrency was not followed.

Although the district court concluded that Winingear's health problems did not warrant a decreased sentence, it arranged for his medical needs to be met while in prison:

> I do sympathize with your situation and I have no intention of allowing your health to be jeopardized by giving you–by sentencing

5

you in any particular manner, and I'm going to direct that the Bureau of Prisons put you in a facility where you can received adequate treatment and that you get a designation as soon as possible.

. . .

The Court recommends that the defendant be imprisoned at an institution where his diabetes can be controlled and taken care of and also where a mental health treatment program is available.

The Court further directs the Bureau of Prisons to get a designation to such an institution forthwith as soon as possible.

The district court explained that the Guideline range was appropriate under the facts of the case:

[I]n a white-collar case when it comes time for sentencing everyone feels sorry for the person who did the crime. And you don't generally see the victims in here. There aren't any victims in here. They are all from places other than Mobile. But you affected 21 lives by basically stealing from them over the internet. Each one of those people were affected in a particular way.

I've read victim impact statements from some of them, not from all of them. And it's up to a sentencing judge to balance the harm you did to society with your particular needs at the time of sentencing. And one of the real effects of sentencing in a white-collar case is punishment. People whose lives have been affected–and there are 21 people in this case–they have a right to see you punished.

I have considered the statutory sentencing in this case, I have considered the guideline range, and I find the guideline range is an appropriate range for sentencing in your case.

. . . .

The Court finds that the recommended sentencing range is appropriate under the facts and circumstances of this case.

And the sentence imposed does address the seriousness of the offense and the sentencing objectives of punishment, deterrence, and incapacitation.

Winingear appealed.

6

## II. STANDARD OF REVIEW

After the district court has accurately calculated the Guideline range, it "may impose a more severe or more lenient sentence" that we review for reasonableness. United States v. Crawford, 407 F.3d 1174, 1179 (11th Cir. 2005) (citing United States v. Booker, 543 U.S. —, 125 S. Ct. 738, 767 (2005)). Additionally, we review de novo our subject matter jurisdiction. Webb v. Worldwide Flight Serv., Inc., 407 F.3d 1192, 1194 (11th Cir. 2005).

## III. DISCUSSION

Winingear argues that the sentence imposed by the district court was unreasonable because the district court did not decrease the sentence to reflect Winingear's time served in state prison. Winingear's argument has two components: first, he challenges the decision of the district court not to depart downward when calculating the appropriate Guideline range; and, second, he challenges the final sentence as unreasonable. Winingear's argument fails.

### A. We Have No Jurisdiction to Review the Decision of a District Court Not to Depart Downward.

Winingear argues that "it was unreasonable for the district court to deny Winingear credit under U.S.S.G. § 5K2.23 for the six months he served in prison for the Indiana offense." Section 5K2.23 provides that a downward departure "may be appropriate" if a defendant has completed serving a term of imprisonment

7

and would be eligible for sentence adjustment under section 5G1.3(b) had his sentence been undischarged at the time of sentencing. U.S.S.G. § 5K2.23. The section also provides that, if the district court grants such a departure, the departure "should be fashioned to achieve a reasonable punishment for the instant offense." Id. Winingear misunderstands our scope of reasonableness review.

We do not apply the reasonableness standard to each individual decision made during the sentencing process; rather, we review the final sentence for reasonableness. See Crawford, 407 F.3d at 1178 ("Booker established a 'reasonableness' standard for the sentence finally imposed on a defendant"). We first review decisions of the district court regarding Guideline calculations to ensure that the district court calculated the Guideline range correctly. Id. In that light, we construe Winingear's challenge of the decision of the district court not to depart downward as a challenge of the preliminary application of the Guidelines.

After Booker, our review of decisions regarding downward departures remains limited. Before Booker, we stated repeatedly that section 3742(a) of Title 18 of the United States Code left us without jurisdiction to consider a defendant's appeal of a discretionary decision of the district court to not apply a downward departure, so long as the district court did not incorrectly believe that it lacked the authority to apply a departure. See, e.g., United States v. Hadaway, 998 F.2d 917,

8

919 (11th Cir. 1993) ("We may not . . . review a district court's refusal to grant a downward departure on the merits. 18 U.S.C. § 3742(a)."); United States v. Gomez-Villa, 59 F.3d 1199, 1202 (11th Cir. 1995) (citing Hadaway). Although the Supreme Court in Booker excised section 3742(e), it left section 3742(a) intact. Booker, 543 U.S. —, 125 S. Ct. at 765-66. We agree with the Eighth and Tenth Circuits that our precedent similarly remains intact, and, therefore, we lack jurisdiction to review the decision of the district court not to apply a downward departure. See United States v. Frokjer, No. 04-2028, — F.3d —, 2005 WL 1679379, at *8 (8th Cir. Jul. 20, 2005) (Booker did not alter "rule that a district court's discretionary decision not to depart downward is unreviewable"); United States v. Sierra-Castillo, 405 F.3d 932, 936 (10th Cir. 2005) (same). The parties do not dispute that the district court recognized its authority to depart downward, and we may not review that decision.

*B. Winingear's Sentence Was Not Unreasonable.*

Winingear's argument that his sentence is unreasonable also fails. Before Booker, we reviewed departures from the Guidelines for reasonableness. See, e.g., United States v. Blas, 360 F.3d 1268, 1274 (11th Cir. 2004); United States v. Melvin, 187 F.3d 1316, 1322 (11th Cir. 1999). That review required us to determine whether the sentence imposed by the district court was reasonable in the

context of the factors outlined in section 3553(a) of Title 18 of the United States Code. Blas, 360 F.3d at 1274. Following Booker, these factors continue to guide our review: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." Booker, 543 U.S. —, 125 S. Ct. at 766. These factors include the available sentences, the applicable Guideline range, the nature and circumstances of the offense, and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and provide the defendant with needed medical care. 18 U.S.C. § 3553(a).

The government urges us to hold that sentences within the Guideline range are per se reasonable, but we need not address whether or how much deference is owed sentences within the applicable Guideline range to determine that Winingear's sentence was reasonable. The district court imposed a sentence one-tenth the length of the twenty-year statutory maximum sentence for mail fraud that does not affect a financial institution. 18 U.S.C. § 1341. Winingear defrauded 21 people of a total of $19,600, had multiple previous convictions, committed this crime while still under sentence for a previous crime, violated his bond, and threatened to murder arresting officers as he fled from them. The district court

10

took care that its sentence provided Winingear with needed medical care.  In the light of the factors outlined in section 3553(a), the sentence of the district court was reasonable.

## IV.  CONCLUSION

The sentence of the district court was reasonable and is, therefore,

**AFFIRMED.**