[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 7, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-11243
Non-Argument Calendar

_____

D. C. Docket No. 05-00332-CR-T-24-MSS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDIN-ALFONSO MARTINEZ-ESPITIA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 7, 2006)

Before ANDERSON, BIRCH and FAY, Circuit Judges.

PER CURIAM:

Edin Alfonso Martinez-Espitia, a Colombian national, appeals his concurrent 135-month sentences for conspiracy to possess and possession with intent to distribute five or more kilograms of cocaine while aboard a vessel subject to United States jurisdiction in violation of 46 U.S.C. §§ 1903(a), (j), and (g). On appeal, he argues that the district court erred by denying him a minor-role reduction and by imposing an unreasonable sentence that failed to take into consideration the sentencing factors set forth at 18 U.S.C. § 3553(a). For the reasons set forth more fully below, we affirm.

Martinez-Espitia pled guilty to both of the above-mentioned charges. According to the undisputed facts in the presentence investigation report (PSI), on August 3, 2005, the United States Coast Guard, using 30 rounds of disabling fire, intercepted and boarded a go-fast vessel that contained over 525 kilograms of cocaine. In Colombia, Martinez-Espitia had been a sea taxi driver and was familiar with boat navigation. In July 2005, he was approached and offered $8,000, $4,000 to be paid up front, if he would participate in a trip transporting illegal drugs. Martinez-Espitia was also paid 500,000 Colombian pesos for his expenses. He agreed to participate because he needed the money to pay his mother's medical expenses. Moreover, he did not know any of the other three individuals on the trip.

The PSI set Martinez-Espitia's base offense level at 38 under U.S.S.G.

2

§ 2D1.1(c)(1). Martinez-Espitia then received a two-level reduction under § 2D1.1(b)(7) because he met the criteria for sentencing without regard to the statutory minimum as set forth at § 5C1.2. He also received a three-level reduction for acceptance of responsibility under §§ 3E1.1(a) and (b), for a total offense level of 33. With no criminal history points, Martinez-Espitia's criminal history was category I, which at offense level 33 provided an advisory sentencing range of 135 to 168 months' imprisonment. Prior to sentencing, Martinez-Espitia filed a motion arguing that he should be rewarded a mitigating-role adjustment under U.S.S.G. § 3B1.2.[1] In essence, he argued that his conduct was limited to this one shipment and that he was not an organizer, leader, manager, or supervisor of any of the criminal activity, but only a crew member without any knowledge of the overall drug conspiracy.

At sentencing, Martinez-Espitia argued that there was no evidence that he was the captain of the boat and no indication that he was aware of or participated in any larger conspiracy. He admitted to being the driver of the boat and receiving $4,000 for his role. The government argued that Martinez-Espitia was paid nearly as much as the captain of the boat, most likely because he had skill as a mariner.

---

[1] Pursuant to U.S.S.G. § 2D1.1(a)(3), Martinez-Espitia's offense level would be reduced an additional four levels if he received a mitigating-role adjustment. See U.S.S.G. § 2D1.1(a)(3).

The district court noted that it had granted a role adjustment to another codefendant, Rafael Puertas-Moncada, who had been paid substantially less than the others and whose role was only to occasionally steer the boat and change the gas tanks. The district court overruled Martinez-Espitia's objection, finding that, although his role was less than a captain, it was not less than Puertas-Moncada's role and he was paid substantially more. The court then considered the § 3553(a) factors, specifically regarding the appropriate punishment and deterrence and protection of the community, and imposed 135 months' imprisonment on each count to run concurrently, the low end of the advisory guideline range.

On appeal, Martinez-Espitia first argues that the district court improperly denied him a minor-role reduction because his role in the voyage was as a crewman, it was his first trip, and he had no involvement in the planning. He further argues that the district court failed to correctly apply or take into consideration Martinez-Espitia's relevant conduct when it denied him a minimal or minor role reduction even though he was not an organizer, leader, manager, or supervisor of the criminal activity.

We review "a district court's determination of whether a defendant qualifies for an adjustment under the sentencing guidelines for clear error." United States v. Boyd, 291 F.3d 1274, 1277 (11th Cir. 2002). "The defendant bears the burden of

proving his minor role by a preponderance of the evidence." Id. Under U.S.S.G. § 3B1.2(b), a defendant qualifies for a two-level reduction to his offense level if he was a minor participant in the offense. U.S.S.G. § 3B1.2(b). The guidelines further define a minor participant as one "who is less culpable than most other participants, but whose role could not be described as minimal." Id., comment. (n.5).

As we clarified in United States v. DeVaron, 175 F.3d 930 (11th Cir. 1999) (en banc), when determining whether a minor-role reduction is warranted, a district court should consider (1) whether the defendant played a minor role in relation to the relevant conduct for which he was held accountable and (2) where appropriate, the culpability of the defendant as measured against that of other participants in the relevant conduct. De Varon, 175 F.3d at 940, 944.

Here, it cannot be said that the district court clearly erred by denying Escobar-Martinez a minor-role reduction. Applying the first part of DeVaron, the relevant conduct for which he was held accountable was the weight of the bales discarded from the go-fast boat, determined to weigh 525 kilograms. In addition, he admitted to being a driver on the boat and had relevant skills from his job as a sea taxi driver. Therefore, his actual and relevant conduct were the same. "[W]hen a drug courier's relevant conduct is limited to [his] own act of importation, a

5

district court may legitimately conclude that the courier played an important or essential role in the importation of those drugs." DeVaron, 175 F.3d at 942-43. In addition to transporting a large quantity of drugs, Martinez-Espitia also was responsible for driving the boat, an essential role.

With respect to the second part of the DeVaron analysis, there is insufficient evidence to show that Martinez-Espitia was a minor or minimal participant in comparison to others. In determining whether a defendant was less culpable than others, "the district court should look to other participants only to the extent that they are identifiable or discernible from the evidence." Id. at 944. Here, the persons identifiable from the evidence are Martinez-Espitia and the three other crew members of the vessel. Moreover, "where the relevant conduct attributed to a defendant is identical to [his] actual conduct, [he] cannot prove that [he] is entitled to a [mitigating-role] adjustment simply by pointing to some broader criminal scheme in which [he] was a minor participant but for which [he] was not held accountable." Id. at 941. As the PSI indicated, Madera-Lopez was identified as the captain, and another codefendant, Marcos Valenzela, was hired to protect the drugs on the boat. At the sentencing hearing, it was revealed that the other codefendant, Puertas-Moncada, occasionally steered the boat and replaced gas tanks. Unlike Puertas-Moncada, however, Martinez-Espitia was paid nearly as

6

much as the captain of the boat and his role was clearly to drive the boat. Driving the boat is not an insubstantial role, as evidenced by the amount of money offered to Martinez-Espitia, and he failed to provide evidence that his responsibilities aboard the vessel were less vital to the enterprise than those of any other crew members. Therefore, we conclude that the district court did not err by refusing to grant a role reduction.

Next, Martinez-Espitia argues that the district court violated the Supreme Court's decision in Booker because it failed to consider "the numerous factors" that could have resulted in a more fair and just sentence, such as his family, financial background, health, educational and vocational level, and lack of criminal history. He further argues that the district court's imposition of a low-end guideline sentence was unreasonable pursuant to § 3553(a).

Where a defendant challenges his overall sentence, we review for unreasonableness. United States v. Winingear, 422 F.3d 1241, 1244 (11th Cir. 2005); United States v. Booker, 543 U.S. 220, 261-62, 125 S.Ct. 738, 765-66, 160 L.Ed.2d 621 (2005) (holding that appellate courts review sentences for unreasonableness in light of the § 3553(a) factors). We have further held that "nothing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of

the § 3553(a) factors." United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005). An acknowledgment that the district court has considered a defendant's arguments and the § 3553(a) factors is sufficient under Booker. Id. Moreover, we have rejected the notion that a sentence within the guidelines is per se reasonable, although "the use of the Guidelines remains central to the sentencing process." United States v. Talley, 431 F.3d 784, 787 (11th Cir. 2005). We have further stated that, "there is a range of reasonable sentences from which the district court may choose, and when the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one." Id. at 788.

Here, the district court explicitly acknowledged that it had considered the § 3553(a) factors, particularly those relating to an appropriate punishment, deterrence, and protection of the community. Furthermore, the court acknowledged and understood that Martinez-Espitia had committed the crime in question because his mother was ill and he needed money to care for her. This Court has acknowledged that the Guidelines promulgated by the Sentencing Commission have been honed to take into consideration the § 3553(a) factors, and, therefore, Martinez-Espitia's 135-month concurrent sentences, imposed at the low-end of the applicable guideline range, adequately reflected his personal

characteristics and history, just punishment, and adequate deterrence. See Scott, 426 F.3d at 1330, n.5. Martinez-Espitia has not provided any evidence that his sentence was unreasonable, and the record demonstrates that the district court took the § 3553(a) factors and the guidelines into consideration before imposing his sentence. We, therefore, cannot say that Martinez-Espitia's sentence was unreasonable.

**AFFIRMED.**