[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 13, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-12014

_____

D. C. Docket No. 05-00199-CR-A-N

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DERRICK SAFFOLD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(February 13, 2007)**

Before CARNES, PRYOR and FARRIS,* Circuit Judges.

PER CURIAM:

_____

*Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit Court of Appeals, sitting by designation.

One evening while he was under indictment in state court for various robbery and theft charges, Derrick Saffold was sitting in a car at a gas station. He was in the passenger seat wearing a bullet-proof vest and holding two guns in his lap. A police officer who happened to be there spotted Saffold and arrested him. Saffold admitted, both to his state probation officer and also while testifying at his sentence hearing, that at the time of his arrest he and the driver of the car were on their way to participate with a third man in a drive-by shooting. The third man was not with them, but as Saffold said during his testimony, "we were fixing to go pick him up." [1]

Saffold pleaded guilty to one count of receiving firearms and ammunition

---

[1] In a written statement to his probation officer, Saffold described what happened this way:

> Audrey asked me if I was "down" with a drive by, meaning a shooting. I said yes. We called Ellis Diggs on the telephone and asked him if he was "down" with it. Ellis said he was. We told Ellis that we would leave about 9:00pm on 05/06/05. We had to go get Ellis, because his car had ran out of gas. Ellis had a .40 cal handgun, the big gun. When we got out to put gas in Ellis's car, Ellis left his gun in our car. Ellis told us to give him the gun back when we got to Hayneville. When we arrived at the Hayneville BP, at or about 10:00pm, we stopped in front of the store and Ellis stopped at the gas pumps. Ellis was supposed to get more gas in his car and we were going to take my sister's car, Geo, back to her and Audrey and myself would get in Ellis's car with him. Police officer walked by my car and saw the two guns in my lap with a "vest" on. The police officer told me to step out of the car and asked me who the guns belonged to. I told him that they were my cousin's guns. I asked the police to let me take the vest off and I attempted to run away. The police caught me, put me in handcuffs and took me to jail. This is a true statement.

2

which had been shipped in interstate or foreign commerce while under indictment for a separate felony, in violation of 18 U.S.C. § 922(n). This is his appeal of the resulting 30-month sentence. Saffold raises two issues.

## I.

Saffold contends that the district court improperly increased his offense level under United States Sentencing Guidelines § 2K2.1(b)(5) (Nov. 2005), which requires a 4-level increase in the defendant's offense level if the defendant possessed a firearm in connection with a felony offense other than the offense of conviction.[2] In particular, § 2K2.1(b)(5) conditions the 4-level increase on his "use[] or possess[ion] [of] any firearm or ammunition in connection with another felony offense" or his "possess[ion] or transfer[] [of] any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." U.S.S.G. § 2K2.1(b)(5). The term "'another felony offense' . . . refer[s] to offenses other than explosives or firearms possession or trafficking offenses," id. cmt. n.15, and subject to that limitation, "felony offense" includes "any offense (federal, state, or local) punishable by imprisonment for a term exceeding one year, whether or not a criminal charge was

---

[2] The guideline was re-numbered § 2K2.1(b)(6) in the 2006 guidelines, but no change was made in the text.

3

brought, or conviction obtained," id. cmt. n.4.

Saffold raised the issue of § 2K2.1(b)(5)'s application by timely objection during the sentence proceeding. He did so even while conceding that he and another individual had indeed planned to carry out a drive-by shooting when they got into the car with the firearms on the evening of his arrest. Saffold relied on his testimony that he and the driver of the car had altogether abandoned the drive-by shooting plans by the time the police saw him at the gas station that night. However he articulated his argument to the district court, he argues to us that the § 2K2.1(b)(5) enhancement does not apply because he was not guilty of the felony of attempting or conspiring to commit the planned drive-by shooting; he was not, he insists, because he backed out of the conspiracy and abandoned the attempt before the shooting happened and before he was arrested in possession of the firearms. Under Alabama law, he argues, his conduct amounted to renunciation and it means he did not commit a felony in connection with his possession of the firearms.

We are not persuaded by Saffold's renunciation argument. Even if he did tell the truth in his testimony, his conduct is not sufficient under Alabama law to render him "not liable" under Ala. Code § 13A-4-3(c) for the felony of conspiring to commit the drive-by shooting. The renunciation defense to conspiracy requires

that one have given "a timely and adequate warning to law enforcement authorities or made a substantial effort to prevent the enforcement of the criminal conduct contemplated by the conspiracy." Id. Merely changing one's mind and informing a co-conspirator is not enough, especially if one continues to hold the firearms and wear a bullet-proof vest while sitting in the car that was to be used in the drive-by shooting. The district court did not err in applying the § 2K2.1(b)(5) enhancement.

## II.

Saffold also contends that his 30-month sentence was unreasonable under United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005). We review this contention in the context of the factors set out in 18 U.S.C. § 3553(a). See Booker, 543 U.S. at 261, 125 S. Ct. at 766; United States v. Winingear, 422 F.3d 1241, 1246 (11th Cir. 2005). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the advisory guidelines range; (8) the need to avoid unwanted

5

sentencing disparities; and (9) the need to provide restitution to victims. See 18 U.S.C. § 3553(a). "Review for reasonableness is deferential," and the party challenging a sentence bears the burden of establishing unreasonableness in light of the § 3553(a) factors and the record established in the district court. United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).

Saffold's principal argument is that his sentence is unreasonable because the district court failed to properly consider his mild mental retardation. On the way to determining that Saffold's guideline range was 24–30 months, the court denied his motion for a downward departure for diminished mental capacity under U.S.S.G. § 5K2.13. In the course of doing so, the court considered evidence that included: (1) a psychometrist's report dated almost ten years prior to sentencing showing that Saffold had a below average IQ and (2) Saffold's 13-year history of receiving disability benefits for mild mental retardation.

Saffold argues that the transcript of the sentencing hearing is "devoid of any meaningful discussion" of Saffold's mental condition by the district court in arriving at its final sentence. His argument seems to be that the district court was required to specifically reiterate in its § 3553(a) discussion anything it had said earlier in arriving at the guidelines range. We disagree. One discussion is enough. We don't require reiteration.

6

In deciding on a sentence that would be reasonable under § 3553(a), the district court specifically stated that it had "thought a lot about this case in view of the arguments by the defendant as to mental condition." The court also said that it was reaching its decision "considering all of the factors enumerated in 18 U.S.C., Section 3553(a)," which alone is sufficient to satisfy the requirements of Booker. See Talley, 431 F.3d at 786.

The court found that a sentence of 30 months, which was the top of the applicable guidelines range, was appropriate because: (1) it would deter other people under indictment for possessing firearms; (2) Saffold possessed the firearms while en route to a drive-by shooting, and then fled after police tried to arrest him; and (3) Saffold was on probation at the time of his unlawful firearm possession. In view of those considerations and Saffold's criminal history, 30 months was, if anything, on the light side of reasonableness.

**AFFIRMED.**