[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 18, 2007
THOMAS K. KAHN
CLERK

No. 06-15101
Non-Argument Calendar

_____

D. C. Docket No. 05-00190-CR-01-JOF-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ELMER E. TWILLEY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(May 18, 2007)**

Before TJOFLAT, BIRCH and HULL, Circuit Judges.

PER CURIAM:

Elmer E. Twilley appeals his 30-month sentence for mail fraud, in violation of 18 U.S.C. § 1341, as unreasonable. We AFFIRM.

## I. BACKGROUND

On January 28, 2005, Twilley opened a private mail box in the name of Tri-State Trucking Services ("Tri-State") at a United Parcel Service ("UPS") store in Atlanta, Georgia. Approximately three months later, the UPS store contacted the Postal Service and reported that Twilley had sent five mail tubs of letter-size windowed envelopes to businesses throughout the country and had warned that a large number of them would be marked "Return to Sender." The UPS store also informed the Postal Service that it had received some telephone calls stating that the letters were a scam.

On March 18, 2005, a Postal Service inspector arrived at the UPS store and observed approximately 398 pieces of mail addressed to Tri-State, of which at least 79 contained checks made payable to that company. The Postal Service inspector then contacted ten of the companies that had sent checks to Tri-State, and each reported that it had been billed $43.89 for shipping services, despite the fact that it was unable to find any records of service by Tri-State. Significantly, two of the invoices contained the same invoice number.

On March 21, 2005, the UPS store contacted the Postal Service inspector

because approximately thirty checks addressed to Tri-State and fifty pieces of mail marked "Return to Sender" had arrived. Four days later, March 25, 2005, the Postal Service inspector observed an additional 210 pieces of mail addressed to Tri-State, of which 64 appeared to contain checks, 161 were marked "Return to Sender," and the contents of the other 45 could not be determined. The Postal Service inspector spoke to a representative from one of the companies that had written a check to Tri-State. She advised that the shipping company listed on the invoice admitted having received a number of complaints about Tri-State.

On March 31, 2005, the Postal Service inspector contacted the shipping company, which stated that it had received approximately fifteen to twenty complaints about Tri-State, and that it had not shipped to the various companies that had been billed in several years. That day, the Postal Service inspector also observed an additional 189 pieces of mail addressed to Tri-State at the UPS store, of which at least 76 appeared to contain checks. Furthermore, an online search of the Georgia Secretary of State's website revealed that there were no records to establish that Tri-State existed or that Twilley was the registered owner of the company.

Twilley was charged with delivering fraudulently prepared invoices to the Postal Service for mailing. An affidavit from a Postal Service inspector was

attached to the criminal complaint. The affidavit stated that Twilley had opened a mail box at a UPS store, sent hundreds of letters to businesses, received checks from some of these businesses, and that the UPS store had received complaints from other businesses that the letters were scams.

A federal grand jury indicted Twilley on one count of mail fraud, in violation of 18 U.S.C. § 1341. Specifically, the indictment charged that Twilley submitted fraudulently prepared invoices for payment from various corporate entities on ten separate occasions in March 2005. Twilley initially pled not guilty.

Subsequently, Twilley unsuccessfully sought to suppress mail seized from a post office box and documents seized from his vehicle, as well as statements that he had made. At the hearing on the motions to suppress, the government presented the testimony of various witnesses whose testimony corroborated the statements made in the postal inspector's affidavit. After the motions to suppress were denied, Twilley pled guilty to the indictment without a plea agreement.

Twilley's presentence investigation report ("PSI") shows: (1) his base offense level was 7 pursuant to U.S.S.G. § 2B1.1 (Nov. 2005); (2) an eight-level specific offense characteristic enhancement was warranted under § 2B1.1(b)(1)(E), because the intended loss, calculated at $80,362.59, was more than $70,000 but less than $120,000; and (3) a four-level, specific-offense-characteristic

enhancement should be applied pursuant to § 2B1.1(b)(2)(B), because the offense involved more than fifty victims. The probation officer additionally recommended another two-level, specific-offense-characteristic enhancement under § 2B1.1(b)(8)©, because a South Dakota Circuit Court had barred Twilley from conducting business in that state for dunning businesses through fraudulent schemes. After recommending a two-level adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), the probation officer calculated Twilley's adjusted offense level at 19. The probation officer also recommended ordering restitution in the amount of $6,364.05.

Regarding Twilley's criminal history, the PSI shows that he had fourteen prior convictions from 1979 to 1993, including theft by deception, negotiating worthless checks, and attempted failure to redeliver a hired vehicle. Nevertheless, none of these offenses resulted in any criminal history points; consequently, Twilley's criminal history category was I. With an adjusted offense level of 19 and a criminal history category of I, the Sentencing Guidelines recommend an imprisonment range of 30 to 37 months. The statutory maximum for mail fraud, however, was 20 years of imprisonment. 18 U.S.C. § 1341. The probation officer notes that an upward departure could be warranted under U.S.S.G. § 4A1.3, on the ground that Twilley's criminal history category substantially underrepresented the

seriousness of his criminal history or the likelihood that he would commit future crimes. The PSI shows that Twilley had had a heart attack and coronary bypass surgery in 1995. Twilley also reported health issues involving diabetes, high blood pressure, and coronary artery disease.

Twilley's counsel objected to his PSI and argued that his Guidelines sentence should be reduced under the factors of 18 U.S.C. §3553(a). He also maintained that Twilley was entitled to a downward departure pursuant to U.S.S.G. §§ 5H1.4 and 5K2.0(a). Twilley's counsel, however, did not object to any of the factual findings in the PSI.

At sentencing, defense counsel argued that a reasonable sentence should be below the Guidelines range, given Twilley's age of 62 and his health issues. Additionally, defense counsel asserted that, while mail fraud was a "serious offense," Twilley had accepted responsibility for the crime, and the invoices were "of a very small amount, . . . $44 on the average." R3 at 13, 14. Further, defense counsel argued that the expected loss was even less than the intended loss, because "the return on [a fraudulent collection] attempt . . . range[d] anywhere from 5 to 10 percent." Id. at 14. Defense counsel maintained that the nature of the offense, Twilley's intent in committing the offense, and the amount of loss "really overrepresent[ed]" the seriousness of the crime. Id. at 15.

6

Twilley also addressed the district judge.  He explained that he had "turned [his] life around" over ten years ago and that "95 percent" of the worthless checks that he had written in the past were "for groceries to feed [his] family."  Id. at 19. Twilley stated that he had "learned [his] lesson from that" and was "sorry" for committing the underlying crime.  Id.

The district judge consulted the § 3553(a) factors before imposing Twilley's sentence.  Noting that "one of the first things [he] need[ed] to do [was] to understand the nature and circumstances of the offense," the judge explained that the invoices were "phoney," the invoice numbers were "bogus," and there was "some evidence of tracking going on to look like it's a real invoice and real factors were being considered in carefully arriving at this $43.89."  Id. at 22-23.  The judge then stated that, although Twilley's criminal history went "back in time," id. at 23, his "extensive criminal record . . . got[] him absolutely no points," id. at 2. Consequently, the court believed that Twilley's criminal history score "underrepresent[ed] his actual criminal history."  Id. at 3.  Further, the district judge observed that the Guidelines "underrepresented the seriousness of property crimes and have not adequately protected respect for the law in these kinds of property crimes."  Id. at 23-24.  Moreover, the judge determined that Twilley's crime was a "pernicious crime that increases the transaction cost to American

7

business[es] . . . trying to provide goods and services to the citizens of this country." Id. at 24. The judge also noted that the Guidelines ranges "prevent[ed] unwarranted disparity." Id.

The district judge then addressed Twilley's arguments for a sentence below the Guidelines range. Noting that age and health were factors that could be considered, the judge nevertheless found that these factors were not sufficient to warrant a variance from the Guidelines range in this case. Id. at 24-25. The judge noted that he had undergone bypass heart surgery within the last two years and that the magistrate judge was able to work every day with diabetes and heart problems. Id. at 24. The judge imposed a 30-month sentence, which was at "the bottom of the guidelines" range, because Twilley had been "more or less straightforward . . . from the beginning." Id. at 25. He also ordered restitution in the amount of $6,364.05. Defense counsel objected to the reasonableness of the sentence, and Twilley has appealed on that basis.

## II. DISCUSSION

On appeal, Twilley argues that his 30-month is unreasonable under § 3553(a), because of his age and serious medical conditions for which he had been prescribed nine different medications, and "in consideration of the nature and circumstances of the offense which involved a substantial[ly] lesser expected loss

in contrast to the intended loss determined under the guidelines." Appellant's Br. at 6. Twilley also contends that, in United States v. Gray, 453 F.3d 1323 (11th Cir. 2006) (per curiam), we affirmed under § 3553(a)(1) a downward variance of 72 months as reasonable, because of the defendant's "age, his prior minimal criminal record, and his medical condition." Id. at 1325. Additionally, Twilley cites United States v. Ryder, 414 F.3d 908 (8th Cir. 2005), a pre-Booker[1] decision, where the Eighth Circuit recognized that a district judge has statutory authority under 18 U.S.C. § 3553(a)(1) and § 3553(a)(2)(D) to consider age and medical condition and to sentence under the Guidelines without considering a downward departure. Id. at 920.

We review post-Booker sentences for reasonableness. United States v. Talley, 431 F.3d 784, 785 (11th Cir. 2005). The "reasonableness" of a sentence is reviewed under the factors outlined in § 3553(a), which include: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of

---

[1] United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005).

sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims." Id. at 786 (citing18 U.S.C. § 3553(a)).

When a district judge considers the § 3553(a) factors, he or she is not required to discuss each factor on the record. Id. "[T]here is a range of reasonable sentences from which the district court may choose," and the burden of demonstrating unreasonableness rests with the party challenging the sentence. Id. at 788. "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court[,]" and "[w]e will not substitute our judgment in weighing the relevant factors." United States v. Williams, 456 F.3d 1353, 1363 (11th Cir.), pet. for cert. filed (U.S. Oct. 19, 2006) (No. 06-7352).

Although a sentence within the Guidelines range is not per se reasonable, we expect such a sentence to be reasonable. Talley, 431 F.3d at 788. Additionally, in reviewing a sentence, "[w]e do not apply the reasonableness standard to each individual decision made during the sentencing process; rather, we review the final sentence for reasonableness." United States v. Winingear, 422 F.3d 1241, 1245 (11th Cir. 2005) (per curiam).

Twilley's 30-month sentence was reasonable. The district judge stated that he had considered the § 3553(a) factors in arriving at the sentence; he was not required to discuss each factor on the record. Moreover, the judge entertained Twilley's argument for a downward departure, but he ultimately concluded that factors other than his age and physical concerns should be afforded greater weight. Specifically, the judge focused on the nature, circumstances, and seriousness of Twilley's crime; his criminal history and the need for deterrence; the goal of providing a just punishment; and the objective of avoiding unwarranted sentencing disparities. The judge additionally explained his reasons for imposing a sentence at the low end of the Guidelines range, rather than below that range, notwithstanding Twilley's age and health issues.

The reasonableness of a sentence is dictated by the facts of a particular case, in view of the factors delineated in § 3553(a). While a variance may have been warranted in Gray and Ryder because of the defendants' ages and health issues, that does not signify that a refusal to grant a variance in this case based on these same two factors rendered Twilley's 30-month sentence unreasonable. Importantly, Twilley's sentence was significantly lower than the 240-month statutory maximum for his crime. Absent any other extenuating circumstances,

11

Twilley's sentence was reasonable.[2]

## III. CONCLUSION

Twilley has appealed his 30-month sentence for mail fraud for being unreasonable, because of his age and medical issues. For the reasons we have explained, his sentence was not unreasonable. Accordingly, Twilley's sentence is **AFFIRMED.**

---

[2] The Federal Bureau of Prisons website, www.bop.gov, shows that Twilley's expected release date is December 30, 2008.