[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 5, 2009
THOMAS K. KAHN
CLERK

No. 07-12538
Non-Argument Calendar

_____

D. C. Docket No. 06-20714-CR-UUB

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICARDO DE VICTOR ACUNA-ACOSTA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 5, 2009)

Before MARCUS, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Ricardo Acuna-Acosta appeals his sentence of 135 months of imprisonment for conspiracy to possess and possession of five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States. 46 U.S.C. §§ 70503(a), 70506(b). Acuna-Acosta argues that he was entitled to a two level reduction of his sentence for his minor role in the conspiracy and that his sentence is unreasonable. We affirm.

## I. BACKGROUND

The Coast Guard intercepted a fishing boat that contained Ricardo Acuna-Acosta, his brother, Manuel Acuna-Acosta, and four cohorts, Reynaldo Varela-Lopez, Dick Dixon-Brounfield, Milton Valle-Alvarado, and Carlos Casildo-Suazo, after the boat made erratic course and speed changes. The Coast Guard searched the boat and discovered 37 blocks of cocaine that weighed 2200 pounds. When questioned by law enforcement, three of the men asserted that they left Honduras to help retrieve a stranded vessel, but two of the men admitted that they were hired to make a drug run.

Ricardo Acuna-Acosta stated that he was recruited by his brother to serve as a mechanic in a mission to retrieve a disabled vessel and, when the boat arrived at the designated coordinates, he and his cohorts discovered blocks of cocaine floating in the ocean. The men decided to collect the cocaine and return to

2

Honduras to sell the substance. When the Coast Guard arrived, Ricardo Acuna-Acosta urged the others to throw the cocaine overboard, but Varela-Lopez ordered them to leave the cocaine on the boat. According to Ricardo Acuna-Acosta, Varela-Lopez kept to himself and appeared to be "in charge."

Manuel Acuna-Acosta stated that he was the captain, but Varela-Lopez was "given charge" of the boat. Manuel said that he was hired to tow a fishing vessel back to port and that Varela-Lopez gave him the coordinates to reach the vessel. Manuel explained that, when they discovered the drugs, Varela-Lopez ordered the crew to collect the packages and return to Honduras.

Dixon-Brounfield, who was hired as a cook by Manuel, was also told that the mission was to retrieve a disabled vessel, but he realized that they were making a drug run when he noticed a "go-fast" boat approach and saw its occupants unloading blocks of cocaine. Dixon-Brounfield told authorities that he, Varela-Lopez, Casildo-Suazo, and Valle-Alvarado transferred the cocaine to their boat, and that Manuel said that Varela-Lopez would pay Dixon-Brounfield $3,000 after they returned to port. Dixon-Brounfield stated that Varela-Lopez regularly made calls on a satellite telephone and he made a call about thirty minutes before the "go-fast" boat arrived.

Valle-Alvarado and Casildo-Suazo knew the true purpose of the mission.

3

Valle-Alvarado told authorities that Manuel offered him $5,000 to work on the boat while it made a drug run. Casildo-Suazo stated that he was hired to retrieve blocks of cocaine from the water.

Ricardo Acuna-Acosta and his cohorts were charged in a two-count indictment for conspiring to possess and the possession of five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States. 46 U.S.C. §§ 70503(a), 70506(b). A laboratory analysis established that the crew possessed over 900 kilograms of cocaine. Ricardo Acuna-Acosta entered a blind plea of guilt to the two crimes and provided to his probation officer a statement admitting that he "knowingly and intentionally conspired to possess with intent to distribute cocaine[.]"

The presentence investigation report listed a base offense level of 38 and reduced that level by two points under the safety valve provision, U.S.S.G. § 5C1.2(a), and another three points for Ricardo Acuna-Acosta's acceptance of responsibility, id. § 3E1.1(a), (b). With a criminal history of I, the report provided a sentencing range between 135 and 168 months of imprisonment. The report stated that none of the crew members, including Ricardo Acuna-Acosta, was entitled to a minor role reduction because their participation was necessary for the success of the "cocaine distribution scheme." Manuel was assigned a four level

4

increase for his role as an organizer, U.S.S.G. § 3B1.1(a), and Varela-Lopez was assigned a three level increase for his role as a supervisor, id. § 3B1.1(b).

Ricardo Acuna-Acosta objected to the report and argued that he was entitled to either a reduction for his minimal role or for his minor role in the conspiracy. He argued that he did not know the quantity of cocaine involved, the logistics of the trip, who would carry the drugs, or the final destination of the drugs. He also blamed his brother for his involvement in the crimes.

At the sentencing hearing, the district court asked why it should award Ricardo Acuna-Acosta a role reduction when the crew members knew they were in possession of a ton of cocaine. Defense counsel responded that he "[didn't] need to revisit the arguments that were previously made" and "under[stood] the Court's position with respect to the relative role of each of the crew members." The court stated that, when the crew knowingly embarked on a mission to bring a ton of cocaine to the United States, no one was entitled to a minor role reduction. The district court considered the statutory factors, the arguments of the parties, and the presentence report and sentenced Ricardo Acuna-Acosta to concurrent sentences of 135 months of imprisonment followed by five years of supervised release. The court asked Ricardo Acuna-Acosta if he objected to the findings of fact or the manner in which the sentence was pronounced, and he responded negatively.

5

## II. STANDARDS OF REVIEW

The determination of the defendant's role in the offense is a finding of fact reviewed for clear error. United States v. Rodriguez De Varon, 175 F.3d 930, 937 (11th Cir. 1999). "In making the ultimate determination of the defendant's role in the offense, the sentencing judge has no duty to make any specific subsidiary factual findings." Id. at 939. We review the final sentence imposed by the district court for reasonableness. United States v. Winingear, 422 F.3d 1241, 1244 (11th Cir. 2005) (per curiam). Review for reasonableness is a deferential standard of review for an abuse of discretion. Gall v. United States, 128 S. Ct. 586, 597 (2007).

## III. DISCUSSION

Ricardo Acuna-Acosta argues that he was entitled to a minor role reduction. He contends that he was a crew member and did not plan or supervise the drug run. He also argues for the first time on appeal that the court erred when it refused to give him a role reduction, but granted a reduction to Valle-Alvarado.

The district court did not err by denying Ricardo Acuna-Acosta a minor role reduction. To receive a minor role reduction, a defendant must establish that he is "less culpable than most other participants, but [his] role could not be described as minimal." U.S.S.G. § 3B1.2, cmt. n.5. "[T]he amount of drugs imported is a

material consideration in assessing [the] defendant's role in [his] relevant conduct" and "may be dispositive - in and of itself- in the extreme case." De Varon, 175 F.3d at 943. Ricardo Acuna-Acosta's brother organized the trip and recruited him to maintain the engines. Based on these facts and the large quantity of drugs involved, the district court did not clearly err by denying Ricardo Acuna-Acosta a minor role reduction.

The district court also did not abuse its discretion by imposing a sentence at the low end of the guideline range. The district court correctly calculated the advisory guideline range and concluded that a sentence within the guidelines was appropriate because of the "deliberate[,]" "egregious[,]" and harmful nature of Ricardo Acuna-Acosta's conduct. See 18 U.S.C. § 3553(a); Gall, 128 S. Ct. at 597. Ricardo Acuna-Acosta's sentence is reasonable.

## IV. CONCLUSION

Ricardo Acuna-Acosta's sentence is **AFFIRMED**.