[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 5, 2009
THOMAS K. KAHN
CLERK

_____

No. 07-12537
Non-Argument Calendar

_____

D. C. Docket No. 06-20714-CR-UUB

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS ALBERTO CASILDO-SUAZO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 5, 2009)

Before MARCUS, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Carlos Casildo-Suazo appeals his sentence of 135 months of imprisonment for conspiracy to possess and possession of five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States. 46 U.S.C. §§ 70503(a), 70506(b). Casildo-Suazo argues that he was entitled to a two level reduction of his sentence for his minor role in the conspiracy and that his sentence is unreasonable. We affirm.

## I. BACKGROUND

The Coast Guard intercepted a fishing boat that contained Casildo-Suazo, and five cohorts, Ricardo Acuna-Acosta, Manuel Acuna-Acosta, Reynaldo Varela-Lopez, Dick Dixon-Brounfield, and Milton Valle-Alvarado, after the boat made erratic course and speed changes. The Coast Guard searched the boat and discovered 37 blocks of cocaine that weighed 2200 pounds. When questioned by law enforcement, three of the men asserted that they left Honduras to help retrieve a stranded vessel, but Casildo-Suazo and another cohort admitted that they were hired to make a drug run.

Ricardo Acuna-Acosta stated that he was recruited by his brother to serve as a mechanic in a mission to retrieve a disabled vessel and, when the boat arrived at the designated coordinates, he and his cohorts discovered blocks of cocaine floating in the ocean. The men decided to collect the cocaine and return to

Honduras to sell the substance. When the Coast Guard arrived, Ricardo urged the others to throw the cocaine overboard, but Varela-Lopez ordered them to leave the cocaine on the boat. According to Ricardo, Varela-Lopez kept to himself and appeared to be "in charge."

Manuel Acuna-Acosta stated that he was the captain, but Varela-Lopez was "given charge" of the boat. Manuel said that he was hired to tow a fishing vessel back to port and that Varela-Lopez gave him the coordinates to reach the vessel. Manuel explained that, when they discovered the drugs, Varela-Lopez ordered the crew to collect the packages and return to Honduras.

Dixon-Brounfield, who was hired as a cook by Manuel, was also told that the mission was to retrieve a disabled vessel, but he realized that they were making a drug run when he noticed a "go-fast" boat approach and saw its occupants unloading blocks of cocaine. Dixon-Brounfield told authorities that he, Varela-Lopez, Casildo-Suazo, and Valle-Alvarado transferred the cocaine to their boat, and that Manuel said that Varela-Lopez would pay Dixon-Brounfield $3,000 after they returned to port. Dixon-Brounfield stated that Varela-Lopez regularly made calls on a satellite telephone and he made a call about thirty minutes before the "go-fast" boat arrived.

Valle-Alvarado and Casildo-Suazo knew the true purpose of the mission.

Valle-Alvarado told authorities that Manuel offered him $5,000 to work on the boat while it made a drug run. Casildo-Suazo stated that he was hired to retrieve blocks of cocaine from the water.

Casildo-Suazo and his cohorts were charged in a two-count indictment for conspiring to possess and the possession of five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States. 46 U.S.C. §§ 70503(a), 70506(b). A laboratory analysis established that the crew possessed over 900 kilograms of cocaine. Casildo-Suazo entered a blind plea of guilt to the two crimes.

The presentence investigation report listed a base offense level of 38 and reduced that level by two points under the safety valve provision, U.S.S.G. § 5C1.2(a), and another three points for Casildo-Suazo's acceptance of responsibility, id. § 3E1.1(a), (b). With a criminal history of I, the report provided a sentencing range between 135 and 168 months of imprisonment. The report stated that none of the crew members, including Casildo-Suazo, was entitled to a minor role reduction because their participation was necessary for the success of the "cocaine distribution scheme." Manuel was assigned a four level increase for his role as an organizer, U.S.S.G. § 3B1.1(a), and Varela-Lopez was assigned a three level increase for his role as a supervisor, id. § 3B1.1(b).

Casildo-Suazo objected to the report and argued that he was entitled to a two level reduction for his minor role in the conspiracy. He argued that he served as a deck hand and was the least culpable of the crew members. He contended that he served the same role as Valle-Alvarado, who had received a recommendation for a minor role reduction.

Casildo-Suazo reasserted his objections at his sentencing hearing. The government explained that it recommended a minor role reduction for Valle-Alvarado because he was eighteen years old, he was recruited to serve on the boat 36 hours before the drug run, he was sick throughout the voyage, and he was the first defendant to cooperate with the government. Casildo-Suazo, on the other hand, knew about the drug run, served an important role on the boat, and waited until two days before trial to change his plea. The government argued that Casildo-Suazo served as a mechanic, but after Casildo-Suazo argued that he was a deck hand, the district court corrected the government and explained that the presentence report stated that Casildo-Suazo performed boat maintenance. The district court assured Casildo-Suazo that he was not going to be penalized for exercising his right to a trial.

The district court explained that Casildo-Suazo had been untruthful in his post-arrest interview and had committed a very serious offense that "scream[ed]

5

out" for deterrence and warranted a sentence within the guideline range. The court stated that, in the absence of evidence that Casildo-Suazo did not know he was going to be involved with a ton of cocaine, it would not award him a minor role reduction. The district court considered the statutory factors, the arguments of the parties, and the presentence report and sentenced Casildo-Suazo to concurrent sentences of 135 months of imprisonment followed by three years of supervised release.

## II. STANDARDS OF REVIEW

The determination of the defendant's role in the offense is a finding of fact reviewed for clear error. United States v. Rodriguez De Varon, 175 F.3d 930, 937 (11th Cir. 1999). "In making the ultimate determination of the defendant's role in the offense, the sentencing judge has no duty to make any specific subsidiary factual findings." Id. at 939. We review the final sentence imposed by the district court for reasonableness. United States v. Winingear, 422 F.3d 1241, 1244 (11th Cir. 2005) (per curiam). Review for reasonableness is a deferential standard of review for an abuse of discretion. Gall v. United States, 128 S. Ct. 586, 597 (2007).

## III. DISCUSSION

Casildo-Suazo argues that he was entitled to a minor role reduction. He contends that he was a crew member and did not plan or supervise the drug run. He also argues that he was entitled to a reduction because his conduct was comparable to that of Valle-Alvarado. We disagree.

The district court did not err by denying Casildo-Suazo a minor role reduction. To receive a minor role reduction, a defendant must establish that he is "less culpable than most other participants, but [his] role could not be described as minimal." U.S.S.G. § 3B1.2, cmt. n.5. "[T]he amount of drugs imported is a material consideration in assessing [the] defendant's role in [his] relevant conduct" and "may be dispositive - in and of itself - in the extreme case." De Varon, 175 F.3d at 943. Because Casildo-Suazo willingly joined a conspiracy to possess a ton of cocaine, we cannot state that the district court clearly erred in its decision.

The district court also did not abuse its discretion by imposing a sentence at the low end of the guideline range. The district court correctly calculated the advisory guideline range and concluded that a sentence within the guidelines was necessary to deter similar future conduct. See 18 U.S.C. § 3553(a); Gall, 128 S. Ct. at 597. Casildo-Suazo's sentence is reasonable.

## IV. CONCLUSION

Casildo-Suazo's sentence is **AFFIRMED**.