[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11643
Non-Argument Calendar
_____

D.C. Docket No. 9:17-cr-80207-WJZ-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus


MANUEL L. MENDEZ-DELGADO,

Defendant - Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 14, 2019)

Before MARCUS, MARTIN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Manuel Mendez-Delgado appeals his conviction for illegal reentry. The government contends we lack jurisdiction to hear this appeal. However, we do have jurisdiction, and we affirm Mendez-Delgado's conviction.

## I.

In 2004, an Immigration Judge ordered Mendez-Delgado removed in absentia after he failed to appear at a hearing. Mendez-Delgado was later apprehended and removed from the United States in 2010.

Then Mendez-Delgado again reentered the United States unlawfully. He was arrested for failure to appear in a state court matter in 2017. This brought him to the attention of the Department of Homeland Security, and he was indicted for illegal reentry after having been removed in violation of 8 U.S.C. § 1326(a).

Mendez-Delgado moved to dismiss the indictment, challenging the validity of the underlying order of removal. The District Court denied the motion to dismiss and convicted Mendez-Delgado of illegal reentry after a bench trial. This appeal timely followed.

## II.

We review de novo our subject matter jurisdiction. United States v. Winingear, 422 F.3d 1241, 1245 (11th Cir. 2005) (per curiam). We also review de

novo a collateral challenge to the validity of a deportation order.  United States v.

Watkins, 880 F.3d 1221, 1224 (11th Cir. 2018) (per curiam).

### III.

The government's sole argument on appeal is that this court lacks

jurisdiction because Mendez-Delgado failed to exhaust available remedies.  It is

true that Mendez-Delgado had to exhaust administrative remedies, but his failure

to do so does not necessarily deprive us of jurisdiction.

The Immigration and Nationality Act (INA) prohibits collateral attacks on

removal orders underlying illegal reentry charges unless "(1) the alien exhausted

any administrative remedies that may have been available to seek relief against the

order; (2) the deportation proceedings at which the order was issued improperly

deprived the alien of the opportunity for judicial review; and (3) the entry of the

order was fundamentally unfair."  8 U.S.C. § 1326(d).  But this provision does not

"contain . . . jurisdictional terms."  Gonzalez v. Thaler, 565 U.S. 134, 143, 132 S.

Ct. 641, 649 (2012) (clarifying that a provision of the Antiterrorism and Effective

Death Penalty Act is nonjurisdictional).  Rather, it requires a defendant to

"demonstrate[]" that all three conditions are met in order to mount a collateral

attack on a removal order.  8 U.S.C. § 1326(d).  In other words, § 1326(d)

establishes what a defendant must prove in order to prevail on the merits of a

collateral attack.  See Watkins, 880 F.3d at 1224–26 (adjudicating the merits of a

collateral challenge to a removal order).  This provision does not deprive us of jurisdiction over the direct appeal of a criminal conviction where a defendant fails to exhaust.

The government cites the jurisdictional limitation on reviewing final orders of removal in 8 U.S.C. § 1252, but reliance on this provision is misplaced.  This statute establishes our jurisdiction to review orders of the Bureau of Immigration Appeals.  See 8 U.S.C. §§ 1252(a)(1), 1252(b); 28 U.S.C. § 2341 et seq.  Before us here is a criminal appeal from a district court judgment over which we have jurisdiction pursuant to 28 U.S.C. § 1291.  Section 1252 does not apply.

## IV.

For his part, Mendez-Delgado says an in absentia order of removal is per se a due process violation after the Supreme Court's decision in Padilla v. Kentucky, 559 U.S. 356, 130 S. Ct. 1473 (2010).  This argument fails.

Padilla held that the Sixth Amendment requires criminal defense counsel to advise clients whether a plea carries a risk of removal.  Id. at 374, 130 S. Ct. at 1486.  The case had nothing to do with the Fifth Amendment's due process clause.  Indeed, the only mention of due process in the Padilla opinion came in dissent.  See id. at 391 & n.1, 130 S. Ct. 1498 & n.1 (Scalia, J., dissenting).  Neither did Padilla have anything to say about whether in absentia removal orders per se violate due process.

4

Mendez-Delgado claims the due process clause now per se forbids entry of removal orders in absentia because Padilla recognized that removal is a "particularly severe 'penalty.'" Id. at 365, 130 S. Ct. at 1481 (quoting Fong Yue Ting v. United States, 149 U.S. 698, 740, 13 S. Ct. 1016, 1032 (1893)).  He says the recognition that removal may amount to a penalty means that the due process protections afforded in criminal proceedings should apply in removal proceedings, as well.

We reject this argument.  The Supreme Court has referred to removal as a penalty for over a century.  See id.  Yet it has never held that the due process protections guaranteed in criminal proceedings apply equally in removal proceedings.  Quite the contrary: it has long held that "[a] deportation proceeding is a purely civil action to determine eligibility to remain in this country," INS v. Lopez-Mendoza, 468 U.S. 1032, 1038, 104 S. Ct. 3479, 3483 (1984), and it adhered to that view in Padilla, see 559 U.S. at 365–66, 130 S. Ct. at 1481.  What's more, the Supreme Court has consistently used a balancing test to determine whether removal procedures comport with due process.  See, e.g., Landon v. Plasencia, 459 U.S. 21, 32–37, 103 S. Ct. 321, 329–32.  We find nothing in Padilla to suggest that the Supreme Court abandoned the balancing approach, such that an order of removal entered in absentia per se violates due process.

**AFFIRMED.**

5